EMANUEL GORDON, Suing on Behalf of Himself and All Otner Similarly Situated Pawnbrokers in the City of Buffalo, Respondent, *v.* J. RAYMOND McGOVERN, as Comptroller of the State of New York, Appellant.

Fourth Department, April 28, 1954.

*Nathaniel L. Goldstein, Attorney-General (Ruth Kessler Toch* and *Wendell P. Brown* of counsel), for appellant.

*Herbert Shafer* and *Robert P. Freedman* for respondent.

VAUGHAN, J. The question before the Special Term was whether section 2 of chapter 610 of the Laws of 1952 (Abandoned Property Law, § 1301) was inapplicable in respect to pawnbrokers and pawnbrokerage business in the city of Buffalo. The

Special Term, in denying defendant's motion for judgment on the pleadings in an action brought by plaintiff for a declaratory judgment, held that the statute was inapplicable to pawnbrokers and the pawnbrokerage business in the said city of Buffalo and permanently enjoined the defendant, J. Raymond McGovern, as Comptroller of the State of New York, from enforcing the statute against the plaintiff and other pawnbrokers similarly situated. The court was of the opinion that, in view of the Charter of the City of Buffalo, which empowers the common council to license and regulate the pawnbrokerage business there, the Abandoned Property Law (§ 1301) should not be construed to apply to pawnbrokers in that city.

We cannot agree with the determination reached by the Special Term. It is of interest to note that the right of a municipality to fix a rate of interest to be charged by pawnbrokers was first recognized in the Revised Statutes of 1829 (Part I, ch. 20, tit. XIX, § 9) in those instances where the charter of the municipality gave it the power to license such pawnbrokers. The various charters of the City of Buffalo from 1853 have all granted to the municipality power to enact ordinances to license and regulate pawnbrokers and the business of pawnbrokerage and since the charter of 1891 to fix the rate to be charged in said business (L. 1853, ch. 230, tit. 3, § 9, subd. 3; L. 1870, ch. 519, tit. III, § 8, subd. 5; L. 1891, ch. 105, tit. II, § 17, subd. [6]; L. 1914, ch. 217, tit. II, § 13, subd. [4]; Local Laws, 1927, No. 4 of Buffalo, § 33, subd. 3 [published in Local Laws, 1932, p. 37]).

The City of Buffalo, pursuant to its charter, has enacted an ordinance requiring the licensing of pawnbrokers, regulating their business and establishing the manner of the sale of unredeemed pledges. It requires the pledgee to keep a record of such sales and to afford to the pledgor of any unredeemed goods which have been sold, or to his executors or administrators, the right at all reasonable times to inspect the books showing such sale (Ordinances of the City of Buffalo, ch. 20, § 15). However, it is noteworthy to observe that no provision is made for the disposition of unclaimed surplus moneys from the sale of pledged articles. The Special Term was fully aware of the absence of any such provision. In referring to the ordinance the court said: "It contains directions as to how surplus moneys shall be disbursed, but there is no provision relating to the final disposition of such surplus moneys, and the practice has been for these surplus moneys to be taken by the pawnbrokers."

We find no reference to the disposition of such unclaimed surplus moneys other than that found in the Abandoned Property Law (§ 1301), which became law in 1952 (L. 1952, ch. 610). It provides:

" § 1301. *Unclaimed surplus from sale of pledge.*

" 1. The word, ' pledgee ', as used in this section shall mean any person, partnership or corporation (a) loaning money on the deposit or pledge of personal property   *   *   *

" 2. Any surplus moneys resulting from a sale by a pledgee, other than a banking organization, after the thirtieth day of June, nineteen hundred fifty of personal property after deducting the amount loaned or advanced, interest due thereon and any other lawful charges, which surplus moneys have remained unpaid to the person entitled thereto for one year from the date of such sale, shall be deemed abandoned property.

" 3. Each year in the month of July and on or before the tenth day thereof every pledgee shall pay to the state comptroller all abandoned property specified in subdivision two of this section. Every such payment shall be accompanied by a verified written statement which shall contain the name and last known address of the pledgor, the date of the sale, the number of the pledge, if receipt given to the pledgor is so identified, and the amount of such surplus moneys."

Payment of unclaimed surplus moneys to the Comptroller relieves the person making such payment from all liability for any claim or claims which exist at the time of payment or thereafter may come into existence in respect to such abandoned property (*Matter of New York Univ. [State Comptroller]*, 271 App. Div. 131, affd. 296 N. Y. 913; Abandoned Property Law, § 1404).

Generally, it is claimed by the plaintiff that the power vested in the city to license, regulate and fix the rates to be charged in the pawnbrokerage business confers upon the city full and complete authority over every phase of the pawnbrokerage business, including the right of control over unclaimed surplus moneys received from the sale of pledged articles. In short, the answer to such contention is that the power vested in the city does not reach unclaimed surplus funds and that the city has never and does not now assert any such right. In our opinion, the Abandoned Property Law in no way limits the power of control over pawnbrokers in the city. It is purely a custodial statute enacted to take over and use for the benefit of all the people of the State property, the ownership of which is unknown

or at least as to which no claim has been made while at the same time protecting the right of the owner of such property. The power to deal with such property is not included in the Charter of the City of Buffalo and is unnecessary to effectuate the licensing and regulatory powers granted to the city by its charter. " Undoubtedly municipal corporations possess implied, as well as express, powers (*Village of Carthage* v. *Frederick*, 122 N. Y. 268.) But to be implied, a power must be so essential to the exercise of some power expressly conferred as plainly to appear to have been within the intention of the legislature. The implied power must be necessary, not merely convenient, and the intention of the legislature must be free from doubt." (*People ex rel. City of Olean* v. *Western New York & P. T. Co.*, 214 N. Y. 526, 529.) We believe it cannot be successfully argued that the power to make disposition of unclaimed surplus property is essential to the exercise of the powers to license and regulate. Absent any such express or implied power, we reach the conclusion that the judgment appealed from should be reversed and judgment granted in favor of the defendant declaring that section 2 of chapter 610 of the Laws of 1952, being section 1301 of the Abandoned Property Law of the State of New York, is a valid and enforcible law applicable to and enforcible against plaintiff and all other similarly situated pawnbrokers in the city of Buffalo and that the defendant recover the costs and disbursements of the action against the plaintiff.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Piper and Wheeler, JJ.

Judgment reversed on the law, with costs, and defendant's motion granted, with $10 costs.