■ MARGARET SHERIDAN, on Behalf of Herself and All Other Beneficiaries of Death Benefits from the Police Pension Funds, Article 2 of the City of New York, Similarly Situated, et al., Respondents, v POLICE PENSION FUND, ARTICLE 2 OF THE CITY OF NEW YORK, et al., Appellants.—Order, Supreme Court, New York County, entered February 15, 1979, granting partial summary judgment to plaintiff class and awarding attorneys' fees to plaintiffs' attorneys in an amount to be later determined, reversed, without costs, on the law and on the facts, to the extent that it awarded counsel fees, without prejudice to a new application to be made on notice to members of the class, and remanded for further proceedings in accordance herewith. Order, Supreme Court, New York County, entered June 22, 1979, fixing the amount of attorneys' fees at $26,000 reversed, on the law and on the facts, without costs. The principal issue litigated on this appeal is whether the record supports an attorneys' fee award of $26,000 payable out of a $525,255 fund resulting from plaintiffs' motion for partial summary judgment which was essentially unopposed by defendants. The fund resulted from a recomputation of death benefits payable to members of the class because of retroactive pay increases mandated by the Court of Appeals in *Patrolmen's Benevolent Assn. of City of N. Y. v City of New York* (41 NY2d 205). Under the circumstances presented, attorneys' fees should not have been awarded without notice of the application to members of the class. Moreover, we find the record inadequate to enable us to determine the reasonable value of the legal services rendered. On September 14, 1977, Margaret Sheridan, a police officer's widow, commenced an action on behalf of herself and all other beneficiaries of death benefits from the defendant Police Pension Fund of the City of New York (Pension Fund) claiming that additional benefits were due under several different, and cumulative, theories. One of the claims, set forth in paragraph 16 of the complaint, alleged that defendants "computed and continue to compute the benefits of plaintiff and of other beneficiaries at an amount less than that actually due by failing to include retroactive pay and other sums becoming due or received after the death of the member of the pension fund." On October 19, 1977, the defendants served an answer consisting of a general denial of the substantive allegations of the complaint. On December 14, 1977, Mrs. Sheridan moved to maintain the action as a class action. On January 19, 1978, a representative of the Pension Fund conceded, in the course of a deposition, that the death gamble benefits (Administrative Code of City of New York, § B18-38.0, subd d) were going to be recalculated to include retroactive salary increases. It therefore appears that prior to April 5, 1978, when an order for class action status was entered, there was virtually no "risk of litigation" with regard to payments due to the plaintiff class which resulted in the fund of $525,255. By notice dated September 22, 1978, plaintiffs moved for partial summary judgment and attorneys' fees solely with regard to the claim contained in paragraph 16 of the complaint. It is notable that the attorney's affirmation in support of the motion mentioned, for the first time, that the retroactive wage increases referred to in paragraph 16 were mandated by the Court of

Appeals in *Patrolmen's Benevolent Assn. of City of N. Y. v City of New York* (41 NY2d 205, *supra*). The affirmation submitted by defendants, nominally in opposition to the motion, actually conceded that it had always been the policy and practice of the Pension Fund to recognize that "where a retroactive increase is awarded so as to increase the lawful salary base for computation of benefits and render the original determination of benefits erroneous, such benefits should be recomputed as promptly as is practicable and the additional amount or amounts due the retiree or beneficiary should be paid to him as promptly as is practicable." It was further explained that the delay in recomputation of death gamble benefits to the class was due solely to insufficient staff as a result of the city's fiscal crisis, and that priority had been given to processing new applications for death gamble benefits. Special Term, in its decision dated January 29, 1979 granting partial summary judgment to plaintiffs, noted that the Pension Fund had consented to make the payments as soon as possible, and that the delay was due to a paperwork backlog. The court rejected counsel's suggested "fair fee" of 25% of the amount obtained for each class member, which would have yielded a fee of over $130,000, and directed the submission of a detailed affidavit of services along the lines set forth in *Washington Fed. Sav. & Loan Assn. v Village Mall Townhouses* (90 Misc 2d 227). That case, cited with approval in McLaughlin's 1977 Supplementary Practice Commentary to CPLR 909 (McKinney's Cons Laws of NY, Book 7B, CPLR 909, C909:1, Cumulative Ann Pocket Part, 1979-1980, p 38), follows the modern Federal formula with respect to awarding attorneys' fees in class actions, which is to start by multiplying the hourly rates of the attorneys involved by the time invested and then to introduce other less objective factors into the calculus, the foremost of these being the attorney's "risk of litigation." *(City of Detroit v Grinnell Corp., 495 F2d 448, 471.)* Other factors to be considered are: "(1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government, (2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel * * * (4) magnitude and complexity of the litigation, (5) responsibility undertaken, (6) the amount recovered, (7) the knowledge the court has of conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial, (8) what it would be reasonable for counsel to charge a victorious plaintiff." *(City of Detroit v Grinnell Corp., supra,* p 470.) We are unable to determine how Special Term applied any of the factors set forth above, there being no hearing held nor decision rendered upon the subsequent application for attorneys' fees. (See *Lindy Bros. Bldrs. of Philadelphia v American Radiator & Std. Sanitary Corp.,* 487 F2d 161.) The joint affirmation of attorneys' services dated March 28, 1979 reviews the history of the litigation from October, 1976 through February, 1979, listing 223 hours expended on such items as telephone calls, conferences, drafting of documents, etc. Although the award of attorneys' fees has been granted on a motion for partial summary judgment on only one of several claims asserted on behalf of the class, the affirmation and time sheets submitted to Special Term do not disclose, or even estimate, what portion of that time was spent in pursuit of the specific claim that resulted in a fund for the class. Thus we are left without even a starting point upon which to apply the other relevant factors mentioned above. We are in general agreement with what appears to be the Federal practice, which is to award attorneys' fees in a class action only after a hearing upon notice to the interested parties, at least where there is an issue of material fact substantial enough to affect the result in meaning-

ful way. (See *City of Detroit v Grinnell Corp. supra*, p 472; *Lindy Bros. Bldrs. of Philadelphia v American Radiator & Std. Sanitary Corp., supra*, p 169; McLaughlin, 1977 Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 909, C909:1, Cumulative Ann Pocket Part, 1979-1980, p 38). We do not find it necessary at this time to determine whether the Federal practice should be required in every case no matter what the circumstances. We hold only that the aforesaid procedure is particularly appropriate in the circumstances presented by the instant case, i.e., where there is a significant issue regarding the cause and effect relationship between the action brought and the result reached, and where the attorneys' fees are to be paid from the fund awarded to the class members. Moreover, we believe that the attorneys who occupy a fiduciary relationship to the members of the class should disclose their fee arrangement with Mrs. Sheridan upon any new application for attorneys' fees. Therefore, we are reversing that portion of the order entered February 15, 1979 which awarded attorneys' fees, without prejudice to a new application to be made on notice to members of the class, and remanding for further proceedings in accordance herewith. Concur—Murphy, P. J., and Sandler, J.; Silverman, J., concurs and Kupferman, J., concurs in part and dissents in part in separate memoranda as follows.

Silverman, J. (concurring). I add only that in my view a court should never award an attorney a fee out of moneys belonging to third persons— here the class that the attorneys undertook to represent—without notice, actual or constructive, of the application to those third persons.

Kupferman, J. (concurring in part, dissenting in part). I would affirm the order of February 15, 1979. With respect to the order of June 22, 1979, I concur only on the limited basis that it would be preferable when attorneys' fees are awarded in a class action, that there be a hearing on notice to all interested parties.