■ MIRIAM FRIAR et al., Appellants-Respondents, v VANGUARD HOLDING CORP., Respondent-Appellant, and EDWARD V. REGAN, Nonparty Respondent.—In a class action for money had and received, the plaintiffs appeal from so much of a judgment of the Supreme Court, Nassau County (Roncallo, J.), entered June 19, 1984, as denied that branch of their cross motion which was for attorneys' fees pursuant to CPLR 909 and provided for the disposition of money held by the Nassau County Treasurer, and the defendant cross-appeals from so much of the same judgment as denied its motion for return of the funds remaining in the possession of the Nassau County Treasurer and provided for the disposition of the funds.

Ordered that the judgment is modified, on the law, by deleting from the seventh decretal paragraph thereof the word "denied" and substituting therefor the following: "granted to the extent that a hearing will be held, on notice to the Comptroller of the State of New York, to determine the reasonable value of the services rendered by the attorneys for the plaintiffs and whether the attorneys have been sufficiently compensated by the payment made to them by the defendant pursuant to the stipulation of settlement". As so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for the hearing with respect to attorneys' fees.

This action was commenced in 1979 to recover from the defendant, a mortgage lender, amounts which it had collected from the sellers of real property as additional mortgage recording taxes in violation of the statutory requirement that the tax was to be paid by the lender (Tax Law § 253 [1-a]). After we affirmed an order permitting the action to be main-

tained as a class action *(see, Friar v Vanguard Holding Corp., 78 AD2d 83)* the action was settled by a stipulation which provided, *inter alia,* that the defendant would pay over to the plaintiffs' attorneys (1) the amount of the illegally collected funds, $31,225.51, to be deposited with the Nassau County Treasurer *(see,* CPLR 2601) to the credit of the action, and (2) $10,000 toward the plaintiffs' legal fees. The stipulation was without prejudice to a subsequent application by the defendant for the return of that portion of the fund which remained unclaimed six months after the settlement had been approved by the court. The stipulation also provided that although the defendant would be relieved of further liability for the plaintiffs' attorneys' fees, absent a substantial violation of the stipulation or a court order, the acceptance of the payment from the defendant did not constitute an admission that $10,000 was the reasonable value of the plaintiffs' attorneys' services, and the plaintiffs' attorneys were free to seek payment of additional fees out of the fund. The stipulation was approved by an order entered November 12, 1981.

In 1983, after extensive efforts to locate all members of the class had been made, the defendant moved for an order directing that the funds remaining on deposit, $14,386.50 plus interest ($31,225.51 originally deposited less $16,839.01 disbursed pursuant to a resettled order entered June 3, 1983), revert to it. The plaintiffs cross-moved for an award of legal fees and disbursements out of the funds on deposit, claiming disbursements in the amount of $3,239.55, and fees of $19,830, which they argued should be tripled because of the novelty and difficulty of the case. Special Term denied both the motion and the cross motion without a hearing and directed that the unclaimed funds be held by the Nassau County Treasurer for two more years and then delivered to the Comptroller of the State of New York pursuant to the provisions of the Abandoned Property Law.

The defendant argues that the unclaimed funds should revert to it because its claim prevents the funds from being considered abandoned property. It is not merely the making of a claim, however, but the making of a rightful claim which causes otherwise abandoned property no longer to be deemed abandoned *(see,* Abandoned Property Law § 600 [2]; *Matter of Menschefrend,* 283 App Div 463, 466, *affd* 8 NY2d 1093). The defendant does not have a rightful claim, since the deposit of funds into court constituted the payment of a judgment, and therefore title passed to the plaintiffs, with the property being held for their benefit by the court *(see,* CPLR 2601; *Hansen v*

*United States,* 340 F2d 142, 143; *Pennsylvania R. R. Co. v United States,* 98 F2d 893). Furthermore, permitting reversion of the unclaimed funds to this defendant would be equivalent to awarding it the benefit of its own wrongdoing, a result which should not be sanctioned *(see, Securities & Exch. Commn. v Golconda Min. Co.,* 327 F Supp 257).

We also reject the challenge to the court's direction that the unclaimed funds be delivered to the State Comptroller as abandoned property. Although a class action is now governed by statute (CPLR art 9) which in turn is largely a duplicate of Federal Rules of Civil Procedure, rule 23, the class action concept has its origin in equity *(see,* 2 Weinstein-Korn-Miller, NY Civ Prac ¶ 901.01; *see also,* 2 Newberg, Class Actions, at 372) and the courts still retain traditional equity power over the fund which is created until it is disbursed *(see, Beecher v Able,* 575 F2d 1010; *In re "Agent Orange" Prod. Liab. Litig.,* 611 F Supp 1396; *Haas v Pittsburgh Natl. Bank,* 495 F Supp 815). Although the application of abandoned property statutes to unclaimed class action funds is not required *(see, Van Gemert v Boeing Co.,* 739 F2d 730, 735; *Panhandle E. Pipe Line Co. v Federal Power Commn.,* 179 F2d 896), we cannot say it was an abuse of discretion to dispose of the unclaimed funds in accordance with the scheme created by the Abandoned Property Law.

In enacting the Abandoned Property Law, the Legislature declared it to be the policy of the State to utilize unclaimed property for the benefit of the citizenry at large while at the same time protecting the interest of the rightful owner *(see,* Abandoned Property Law § 102; *Gordon v McGovern,* 284 App Div 25, *affd* 308 NY 989; *Matter of Menschefrend,* 283 App Div 463, *affd* 8 NY2d 1093, *supra; Matter of New York Univ. [State Comptroller],* 271 App Div 131, *affd* 296 NY 913). The statute accomplishes its purpose by providing that the care and custody of abandoned property be assumed by the State Comptroller for the benefit of those entitled to receive it (Abandoned Property Law § 1404). Under its terms, money deposited in court which remains for five years is deemed abandoned (Abandoned Property Law § 600 [1] [a]) and must be paid by the County Treasurer, who is the depository of such funds (CPLR 2601), to the State Comptroller (Abandoned Property Law § 602). The Comptroller deposits such funds in the abandoned property fund (State Finance Law § 95 [1]), from which any claims are paid pursuant to his direction (State Finance Law § 95 [3]). When the fund exceeds $750,000, the excess is paid into the general fund of the State (State Finance Law

§ 95 [3]), but the State remains perpetually liable to satisfy all rightful claims to abandoned property (Abandoned Property Law § 1404).

Although Special Term's directive that the unclaimed funds be turned over to the Comptroller was five months premature by the terms of the statute, it was apparent at the time of the order that the likelihood of further class members coming forward was small. By employing the Abandoned Property Law scheme, Special Term ensured that a responsible source would always be available to satisfy whatever rightful claims might be asserted in the future, while at the same time permitting the citizens of the State to derive some benefit from the proceeds of the fund which remained. In light of the policy established by the Legislature, there is no basis for overthrowing the disposition.

Special Term should not have denied the application of the plaintiffs' attorneys for fees, however, without holding a hearing. The determination of what constitutes a reasonable fee involves extensive consideration of the nature and value of the services rendered by the plaintiffs' attorneys. In *Matter of Rahmey v Blum* (95 AD2d 294), we adopted an approach to awarding attorneys' fees in which a "lodestar fee" is calculated, based upon the determination of the reasonable number of hours expended and a reasonable hourly rate, and then adjusted based upon a number of subjective considerations *(Matter of Rahmey v Blum, supra,* at pp 303-304). Although *Rahmey* was a civil rights action on behalf of an individual, not a class, this method of awarding attorneys' fees originated in class action litigation *(see, Lindy Bros. Bldrs. v American Radiator & Std. Sanitary Corp.,* 540 F2d 102; *City of Detroit v Grinnell Corp.,* 495 F2d 448) and it is suitable to this case as well. Generally, however, this determination will be made after a hearing *(see,* 2 Weinstein-Korn-Miller, NY Civ Prac ¶ 909.02), since without a hearing the relevant factors cannot be properly assessed and no intelligent review of the award, or refusal to make an award, is possible *(see, Sheridan v Police Pension Fund,* 76 NY2d 800). Because no hearing was held on the application of plaintiffs' attorneys, the matter must be remitted for that purpose, and since the State Comptroller holds title to the unclaimed funds for the benefit of the rightful owners, he must be given notice of the hearing and the opportunity to contest the application. Mollen, P. J., Lazer, Kunzeman and Kooper, JJ., concur.