[808 NYS2d 766]

VICTOR KLEIN et al., Respondents, v ROBERT'S AMERICAN GOURMET FOOD, INC., et al., Respondents. MEREDITH BERKMAN, Nonparty Appellant.

Second Department, January 31, 2006

**APPEARANCES OF COUNSEL**

*Jaroslawicz & Jaros*, New York City (*David Jaroslawicz* and *Robert J. Tolchin* of counsel), for nonparty appellant.

*Robert I. Lax*, New York City, for plaintiffs-respondents.

*Bennett, Moy & Miller, LLP,* New York City (*Alan J. Bennett* and *Jeffrey R. Miller* of counsel), for Robert's American Gourmet Food, Inc. defendant-respondent.

**OPINION OF THE COURT**

FISHER, J.

On this appeal, we are presented with a challenge to the certification of a nationwide, settlement-only class action involving, inter alia, claims of fraud and the violation of sections 349 and 350 of the General Business Law. The facts are largely undisputed.

The defendant Robert's American Gourmet Food, Inc. (hereinafter Robert) created and distributed snack food products under the brand names Pirate's Booty™, Fruity Booty™, and Veggie Booty™ (hereinafter the products). The products were manufactured by the defendant Keystone Food Products (hereinafter Keystone).

When it became known that the fat and caloric content of the products was substantially higher than advertised, lawsuits alleging, inter alia, fraud, and deceptive trade practices were instituted in state courts in New York, California, Florida, and New Jersey. In April 2002, the plaintiffs in this case commenced such an action in the Supreme Court, Nassau County, on behalf of themselves and others similarly situated. They moved for class certification, and soon began settlement negotiations with the defendants and with counsel representing the plaintiffs in other actions pending across the country. Those negotiations resulted in a proposed "Stipulation And Agreement of Compromise and Settlement," dated November 1, 2002, and later amended (hereinafter the settlement).

The settlement, among other things, required Robert to issue and redeem a total of $3.5 million in discount coupons for the purchase of Robert's snack food products. The coupons were to be redeemed at the point of purchase, and each was to be in an amount equaling approximately 20% of the retail price of the product purchased. The coupons were to be distributed at a rate reasonably calculated to result in the redemption of approximately $780,000 per six-month period. In addition, the products were to be tested for fat and caloric content at monthly, and later at quarterly, intervals, and the results were to be reported to class counsel for a period of four years. In exchange, all class members who did not exclude themselves from the class would be enjoined from bringing suit against the defendants on any of the claims asserted in the various pending cases, other than personal injury claims. Lastly, the settlement authorized the payment of up to $790,000 in attorney's fees.

By order entered November 6, 2002, the Supreme Court, in effect, conditionally certified a class (hereinafter the class) for

settlement purposes only. The class consisted of "all persons in the United States who, between January 1, 1999 and October 1, 2002 . . . purchased at retail any of the following products distributed by Robert's American Gourmet Food, Inc.[:] Pirate's Booty™, Fruity Booty™, or Veggie Booty™ snack foods." The Supreme Court also approved the notice of pendency and settlement of class action (hereinafter the notice), and set January 10, 2003, as the date for a "Settlement Fairness Hearing" (hereinafter the fairness hearing). Additionally, the order established procedures and deadlines for class members to opt out of the class or to file objections to the proposed settlement up to and including January 2, 2003.

The appellant was the plaintiff in an individual action commenced in the Supreme Court, New York County, asserting essentially the same claims against the same defendants. Because she was a retail purchaser of one or more of the products, she became a member of the class in this action as well. As such, she filed an objection to the settlement, contending, among other things, that it provided insufficient value to class members, that it contained no injunction against, or admission of liability by, the defendants, that the proposed notice was inadequate, and that the proposed attorney's fees were excessive. The appellant subsequently filed a supplemental objection raising substantially the same issues.

Apart from the appellant, only a handful of other members of the class filed objections. One objector withdrew her objection prior to the fairness hearing in exchange for small changes to the settlement's monitoring provisions and the payment of $33,000 in fees to her attorney out of the $790,000 fund previously requested by the plaintiffs' counsel. At the fairness hearing, another objector withdrew her objection in exchange for a commitment by the defendants, inter alia, to publish a summary notice of the settlement (hereinafter the summary notice) in a national newspaper within 15 days of the settlement's approval, and to pay her attorney $25,000 in fees out of the same $790,000 fund. As part of the agreement with that objector, the plaintiffs' attorney represented to the court that class members would be given an additional 30 days from the publication of the summary notice to opt out "despite the fact that the settlement [will have] been approved." The summary notice was published in the January 23, 2003, edition of USA TODAY, and gave class members until February 26, 2003, to opt out of the class.

On or about January 13, 2003, the appellant filed a second supplemental objection, expressing the additional concern that the settlement as drafted could be discharged in any subsequent bankruptcy proceeding. Apparently, that concern was never considered by the Supreme Court because it had already issued a final order and judgment which was entered the following day. The Supreme Court, inter alia, (1) certified the action as a class action for settlement purposes, (2) approved the settlement as fair, reasonable, adequate, and in the best interests of the class members, (3) dismissed the complaint, (4) enjoined class members from prosecuting as against the defendants any claims released under the terms of the settlement, and (5) awarded $790,000 in attorney's fees to be paid to the plaintiffs' attorneys and distributed in accordance with the terms of the settlement.

On the day the final order and judgment was entered, the appellant moved to vacate it in a motion styled as one for leave to renew the plaintiffs' motion for class certification and approval of the settlement. The following day, January 15, 2003, the appellant informed Keystone in writing that she intended to opt out of the class, and separately served a formal opt-out notice. As a consequence, the plaintiffs and the defendants opposed the appellant's motion on the ground that she lacked standing because she had opted out and was no longer a member of the class.

On or about February 3, 2003, the appellant informed the defendants and the plaintiffs in writing that she had "reconsidered" her position and was now rescinding her prior opt-out notice. The same day, however, the Supreme Court denied her motion on the ground that, by filing an opt-out notice, she had lost standing to assert objections to the settlement. Thereafter, the Supreme Court denied the appellant's motion for leave to renew and reargue. These appeals followed.

I

■ As a threshold matter, we hold that, under the circumstances presented here, the appellant should have been afforded standing to assert her objection to the settlement, both because her purported opt-out notice was defective and untimely, and because, in any event, her written request to opt back in was submitted before the final deadline for the submission of requests for exclusion.

The notice attached to the Supreme Court's original order conditionally certifying the class provided for an opt-out period

ending on January 2, 2003, and made clear that "[n]o person shall be excluded from the Class after that date." At the January 10, 2003, fairness hearing, the Supreme Court approved, inter alia, a verbal amendment to the settlement agreement which, in the words of plaintiffs' attorney, provided that a new notice would be published "within 15 days of Your Honor's approval of the settlement, and we will give people and reference that fact in the notice 30 days from the publication to decide to opt out despite the fact that the settlement has been approved." This amendment was incorporated by reference into the order and judgment. The notice was published on January 23, 2003, and gave class members until February 26, 2003, to opt out.

There were, therefore, two separate, court-ordered opt-out periods. The first ran from November 21, 2002 (the publication date of the first notice), until January 2, 2003, and the second ran from January 23, 2003 (the publication date of the second notice), until February 26, 2003. The appellant's purported January 15, 2003, opt-out was untimely because it was filed after the end of the first opt-out period and before the beginning of the second. Moreover, it was defective in that it failed to include the appellant's address and telephone number. The court-approved opt-out procedures provided explicitly that "[i]n order to be valid, [a request for exclusion] must set forth the following information with respect to the person requesting exclusion: name, address and telephone number," and "[i]f a request for exclusion does not include all of the foregoing information, it shall not be a valid request for exclusion."

Moreover, under the circumstances presented here, even if the appellant's opt-out notice had been valid, her subsequent request to opt back into the class should have been honored. Although it is unusual for one who has opted out of a class to opt back in, it does happen occasionally and has been allowed (see In re Brand Name Prescription Drugs Antitrust Litig., 115 F3d 456, 457 [7th Cir 1997]; In re Electric Weld Steel Tubing Antitrust Litig., 1982 WL 1873, 1982 US Dist LEXIS 14069 [ED Pa 1982]; In re Brown Co. Sec. Litig., 355 F Supp 574, 576 [SD NY 1973]; see generally 5 Newberg on Class Actions § 16:18 [4th ed]). Generally, permission to opt back in must be obtained from the court (see In re Electric Weld Steel Tubing Antitrust Litig., supra; In re Brown Co. Sec. Litig., supra; cf. Snell v Allianz Life Ins. Co., 327 F3d 665 [8th Cir 2003]) unless the terms of the settlement provide otherwise (see e.g. In re "Agent Orange" Prod. Liab. Litig., 304 F Supp 2d 404, 418 [ED NY 2004];

*In re Telectronics Pacing Sys., Inc.,* 137 F Supp 2d 985, 1009 n 20 [SD Ohio 2001]). It has been held, however, that if, *"prior to the deadline set for requests for exclusion,"* an individual who has opted out clearly and unequivocally makes known to the court a desire to opt back into the class, he or she "should be able to rescind any prior contrary communication to the Court asking to be excluded from the class" (*Bailey v Cost Control Mktg. & Sales Mgt. of Va., Inc.,* 132 FRD 435, 437 [WD Va 1990] [emphasis supplied]; *see also Sunrise Toyota, Ltd. v Toyota Motor Co., Ltd.,* 1973 WL 778, *4, 1973 US Dist LEXIS 14862, *9 [SD NY 1973] ["a member of the class is entitled to withdraw the request for exclusion before it has been incorporated into a court order"]). In this case, the appellant purported to opt out in mid-January 2003 and attempted to opt back in on February 3, 2003, well before the expiration of the second opt-out period on February 26, 2003.

Significantly, no prejudice to the defendants or to the remaining class members could result from the appellant's decision to opt back into the class (*see In re Electric Weld Steel Tubing Antitrust Litig., supra*). Under the terms of the settlement, the appellant's inclusion or exclusion from the class would have no impact on the recovery of other class members or on the amounts payable by the defendants. Under these circumstances, the appellant's timely election to challenge the settlement and risk being bound by its terms should be respected. We hold, therefore, that the appellant is a member of the class and, as such, has the requisite standing to challenge the settlement. And, as an objector to the settlement, she is also a proper "party" for purposes of prosecuting this appeal (*cf. Devlin v Scardelletti,* 536 US 1 [2002]; *Auerbach v Bennett,* 47 NY2d 619 [1979]).

## II

■ Having determined that the appellant has standing to challenge the settlement and to pursue her challenge in this Court, we turn to the merits of her objections. In doing so, we are guided by three familiar considerations.

First, in New York, a class action may be maintained only if: (1) the proposed class is so numerous that joinder of all members is impracticable; (2) common questions of law or fact predominate over any questions affecting only individual members; (3) the claims of the representative parties are typical of the class as a whole; (4) the representative parties will fairly and

adequately protect the interests of the class; and (5) the class action is superior to other available methods for the fair and efficient adjudication of the controversy (*see* CPLR 901 [a] [1]-[5]; 902; *Matter of Colt Indus. Shareholder Litig.*, 77 NY2d 185, 194 [1991]; *Ackerman v Price Waterhouse*, 252 AD2d 179, 191 [1998]). Where, as here, a class is certified for settlement purposes only, these prerequisites—and particularly those designed to protect absentee class members—must still be met and, indeed, "demand undiluted, even heightened, attention" (*Amchem Products, Inc. v Windsor*, 521 US 591, 620 [1997]; *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F3d 768, 785 [3d Cir 1995], *cert denied sub nom. General Motors Corp. v French*, 516 US 824 [1995]).

Second, because the disposition of a class action binds class members who do not directly participate in the action, the trial court must act as "the protector of the rights of the absent class members" (*Polar Intl. Brokerage Corp. v Reeve*, 187 FRD 108, 112 [SD NY 1999]) in deciding whether certification as a class action is appropriate and, if so, whether any proposed settlement "is fair, reasonable and adequate" (*Weinberger v Kendrick*, 698 F2d 61, 73 [2d Cir 1982], *cert denied sub nom. Coyne v Weinberger*, 464 US 818 [1983]; *see also* CPLR 908).

And, third, although the question of whether a lawsuit should be resolved as a class action ordinarily rests within the sound discretion of the court applying the statutory criteria to the facts presented, "[t]he Appellate Division, as a branch of [the] Supreme Court, is vested with the same discretionary power and may exercise that power, even when there has been no abuse of discretion as a matter of law by the nisi prius court" (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 52-53 [1999]).

A review of the record here reveals that, apart from a brief statement by counsel indicating approval of the settlement, there is no transcript of what transpired at the fairness hearing. The record contains no detailed findings of fact or conclusions of law, and, therefore, we do not have the benefit of the Supreme Court's reasoning or the basis for its order and judgment. We find, therefore, that the record does not provide information sufficient to allow us to determine whether the Supreme Court made an informed decision and providently exercised its discretion when it certified a nationwide settlement-only class, and when it approved the settlement as fair, reasonable, adequate, and in the best interests of the class members (*see Negrin v Norwest Mtge.*, 293 AD2d 726, 727 [2002]). Our own

concerns, based on the limited record before us, lie in three areas: the appropriateness of certifying a class action with respect to the class as defined, the reasonableness of the settlement, and the award of an attorney's fees. We address them seriatim.

## A. The Certification of a Class Action for the Class as Defined

As a general proposition, in a class action, "the class must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated; rather, it must be restricted to individuals who are raising the same claims or defenses as the representative" (7A Wright, Miller and Kane, Federal Practice and Procedure Civil 3d § 1760). In other words, the class cannot be so broad as to include individuals who have not been harmed by the defendants' allegedly wrongful conduct (*see Levitan v McCoy,* 2003 WL 1720047, *7-8, 2003 US Dist LEXIS 5078, *21-22 [ND Ill 2003]; *Mauldin v Wal-Mart Stores, Inc.,* 2002 WL 2022334, *17-18, 2002 US Dist LEXIS 21024, *42-43 [ND Ga 2002]).

Here, the defendants' alleged wrongful conduct was the misrepresentation of the fat and caloric content of the products. Notably, with the exception of the cause of action asserted under General Business Law § 349, all of the theories of liability advanced by the plaintiffs require proof of reliance. The class, however, consists of *"all persons* in the United States who, between January 1, 1999 and October 1, 2002 . . . purchased at retail any of the following products distributed by Robert's American Gourmet Food, Inc.[:] Pirate's Booty™, Fruity Booty™, or Veggie Booty™ snack foods" (emphasis supplied). Of all the persons in the nation who purchased the products over that nearly four-year period, there were certainly some, and perhaps many, who did so for reasons wholly unrelated to the products' advertised fat and caloric content. Those individuals would not have suffered any injury as a result of the defendants' alleged misrepresentations, and, therefore, their inclusion in the class suggests that the definition is too broad.* The Supreme Court apparently did not consider or address that issue.

---

* We note that a broad class definition such as the one proposed here may be appropriate in the context of federal securities class actions, where proof of individual reliance is obviated by the fraud-on-the-market doctrine (*see e.g. Basic Inc. v Levinson,* 485 US 224, 241 et seq. [1988]), or in certain types of state class actions where similar doctrines of presumptive reliance have been applied (*see Ackerman v Price Waterhouse,* 252 AD2d 179, 196-201 [1998], *supra; King v Club Med,* 76 AD2d 123 [1980]). However, there is nothing in

Moreover, the barren record does not provide the basis for the Supreme Court's conclusion that common issues of law and fact predominate over issues affecting only individual members of the class as defined. The complaint, for instance, asserts causes of action sounding in common-law fraud, negligent misrepresentation, breach of express warranties, and false advertising under General Business Law § 350. Each requires, inter alia, proof of reliance (*see e.g. Gale v International Bus. Machines Corp.*, 9 AD3d 446, 447 [2004] [breach of express warranty and General Business Law § 350]; *Ford v Sivilli*, 2 AD3d 773, 774 [2003] [negligent misrepresentation]; *Kline v Taukpoint Realty Corp.*, 302 AD2d 433 [2003] [common-law fraud]). It would seem, therefore, that there are questions here that are not common to the class (*see Hazelhurst v Brita Prods. Co.*, 295 AD2d 240, 241-242 [2002]), such as whether individual class members purchased the products in reliance upon the allegedly misrepresented fat and caloric contents, as opposed to other considerations (*see Strauss v Long Is. Sports*, 60 AD2d 501, 507 [1978]).

The complaint also asserts a cause of action under General Business Law § 349, which, unlike the plaintiffs' other theories, does not require proof of reliance (*see Gale v International Bus. Machines Corp., supra* at 447). However, General Business Law § 349 is strictly limited in its territorial reach to purchases made in New York (*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 324-325 [2002]). The class, on the other hand, is not limited to New York purchasers, but includes purchasers throughout the United States whose available rights and remedies may differ slightly or significantly from those afforded New York purchasers under New York law (*see Drizin v Sprint Corp.*, 12 AD3d 245 [2004]; *Ackerman v Price Waterhouse, supra* at 193-196). On this record, we have no way of knowing whether the Supreme Court took those differences into account.

We do not mean in any way to suggest that consumer fraud or deceptive trade practices cases should not be adjudicated or settled as class actions (*see Weinberg v Hertz Corp.*, 116 AD2d 1 [1986], *affd* 69 NY2d 979 [1987]; *King v Club Med*, 76 AD2d 123 [1980]; *see generally* 6 Newberg on Class Actions § 21:30 [4th ed]). The existence of individual issues is but one of several factors to be weighed by the court in determining whether class certification is appropriate under the circumstances (*see* CPLR 901, 902; *Weinberg v Hertz Corp., supra*). The record here,

the record to suggest that a similar theory would be applicable here (*see Strauss v Long Is. Sports*, 60 AD2d 501, 508-510 [1978]).

however, does not demonstrate that the Supreme Court took that factor into account at all.

Therefore, the matter must be remitted to the Supreme Court for the development of a proper factual record and thereafter, a new determination as to whether class certification is appropriate pursuant to the factors listed in CPLR 901 and 902.

### B. The Reasonableness of the Settlement

■ Assuming that this action may properly be maintained as a class action for settlement purposes, the Supreme Court must further address whether the proposed settlement is fair, adequate, reasonable, and in the best interest of class members. Where, as here, the action is primarily one for the recovery of money damages, determining the adequacy of a proposed settlement generally involves balancing the value of that settlement against the present value of the anticipated recovery following a trial on the merits, discounted for the inherent risks of litigation (*see In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F3d 768, 806 [1995], *supra*). The amount agreed to here was $3.5 million to be issued and redeemed by the defendants, over a period of years, in the form of discount coupons good toward future purchases of Robert's snack foods. Settlements that include fully assignable and transferable discount coupons that can be aggregated and are distributed directly to class members have been approved because such coupons have been found to provide "real and quantifiable value to the class members" (*Shaw v Toshiba Am. Info. Sys., Inc.*, 91 F Supp 2d 942, 960-961 [ED Tex 2000]; *see also In re Montgomery County Real Estate Antitrust Litig.*, 83 FRD 305, 318 [D Md 1979]). Here, however, there is no indication that the discount coupons have any intrinsic cash value, or that they may be assigned, aggregated, or transferred in any way.

Moreover, under the settlement, the proposed discount coupons are not to be distributed directly to members of the class, but instead will be made available to the public at large. "In a settlement context, when an aggregate class recovery cannot economically be distributed to individual class members . . . the parties, subject to court approval, may agree that undistributed funds will be distributed or disposed of for the indirect benefit of the class" (4 Newberg on Class Actions § 11:20 [4th ed]). Such indirect compensation arrangements have been known, interchangeably, as cy pres or fluid class recovery distributions. In cases where it is difficult to locate

class members or to distribute funds directly to them, a cy pres distribution may prove a useful complement to more traditional distribution formulas (*see In re Mexico Money Transfer Litig.*, 164 F Supp 2d 1002, 1031 [ND Ill 2000], *affd* 267 F3d 743 [7th Cir 2001], *cert denied sub nom. Garcia v Western Union Fin. Servs., Inc.*, 535 US 1018 [2002]).

There is nothing in the record here, however, to suggest that the Supreme Court considered or explored the possibility or appropriateness of a cy pres distribution, and that is particularly troubling inasmuch as the proposed distribution of discount coupons to the public at large, without more, is unlikely to confer any benefit, either direct or indirect, upon those members of the class who have the most serious grievances.

Class members who purchased the products largely because of their advertised low fat and caloric content are those most likely to have been injured by the alleged misrepresentation. Yet, having sought a low-fat, low-calorie snack food, they would be the least likely to purchase the products again now that their higher fat and caloric content has been revealed. Thus, they would be the least likely to reap any benefit from the distribution of discount coupons.

Also relevant to the reasonableness analysis is the cost of the settlement to the defendants. In this regard, we note that there is scant evidence in the record regarding Robert's financial condition, profit margins, or the anticipated impact of the distribution on Robert's future performance.

Finally, we are mindful that, as against the cost of the settlement to the defendants and its corresponding value to members of the class, the court must weigh the plaintiffs' likely recovery at a trial on the merits. Here, a determination of the reasonableness of any settlement would require consideration of the fact that many of the class members, because of the absence of proof of purchase, the cost of litigation, and the individually modest sums at stake, could face significant obstacles in litigating their individual claims, and may elect not to pursue such claims at all. Such considerations certainly broaden the range of reasonableness against which the value of the settlement should be measured.

### C. The Attorney's Fees

The Supreme Court awarded the plaintiffs' attorney's fees in the sum of $790,000. Pursuant to CPLR 909, if a judgment is rendered in favor of the class, "the court in its discretion may

award attorneys' fees to the representatives of the class based on the reasonable value of legal services rendered." The record in this case is insufficient to support the award.

The amount awarded in attorney's fees must be based on the "reasonable value of legal services rendered" (CPLR 909). The burden of showing the reasonableness of the fee lies with the claimant (*see Matter of Karp [Cooper]*, 145 AD2d 208, 216 [1989]), and "[t]he determination of what constitutes a reasonable fee involves extensive consideration of the nature and value of the services rendered by the plaintiffs' attorneys" (*Friar v Vanguard Holding Corp.*, 125 AD2d 444, 447 [1986]). Although the claimant is not required to tender contemporaneously-maintained time records, "the court will usually, and especially in a matter involving a large fee, be presented with an objective and detailed breakdown by the attorney of the time and labor expended, together with other factors he or she feels supports the fee requested" (*Matter of Karp [Cooper], supra* at 216). Otherwise stated, "[t]he valuation process requires definite information, not only as to the way in which the time was spent (discovery, oral argument, negotiation, etc.), but also as to the experience and standing of the various lawyers performing each task (senior partner, junior partner, associate, etc.)" (*Washington Fed. Sav. & Loan Assn. v Village Mall Townhouses,* 90 Misc 2d 227, 230-231 [Sup Ct, Queens County, Kassoff, J., 1977]; *see also Sheridan v Police Pension Fund, Art. 2 of City of N.Y.,* 76 AD2d 800 [1980]).

Here, the law firms representing the plaintiffs submitted brief affirmations attaching firm resumes and disclosed, for each attorney who worked on the case, the name and standing of the individual, as well as the total number of hours worked. The affirmations, however, contained only brief and general descriptions of the work performed by the firm as a whole, and, other than total hours, included no information regarding the tasks performed by any of the individual attorneys. For example, over 481 hours of work performed by the firm serving as lead counsel for the plaintiffs was attributed only to "drafting of pleadings, review of discovery, drafting of memoranda of law, and participation in settlement negotiations." Another 106 hours of work performed by another law firm is described in exactly the same terms. Without more, such descriptions were insufficient to support an award of an attorney's fee.

## III

We conclude that the record below is inadequate to allow us to determine whether the Supreme Court considered factors necessary to make an informed decision and to exercise its discretion providently when it certified a nationwide settlement-only class, approved the settlement as fair, reasonable, adequate, and in the best interests of the class members, and awarded attorney's fees. Moreover, because the record is insufficient to permit an independent review by this Court, we must remit the case for further consideration and factual development relating to those issues. We have considered the parties' remaining contentions and find them to be without merit.

Accordingly, the order and judgment entered January 14, 2003, should be reversed, the matter should be remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith, the appeal from so much of the order entered April 9, 2003, as denied the branch of the motion which was for leave to reargue should be dismissed, as no appeal lies from an order denying leave to reargue, and the appeals from the order entered February 5, 2003, and so much of the order entered April 9, 2003, as denied that branch of the motion which was for leave to renew should be dismissed as academic in light of our determination on the appeal from the order and judgment.

FLORIO, J.P., MASTRO and RIVERA, JJ., concur.

Ordered that the order and judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith; and it is further,

Ordered that the appeal from so much of the order entered April 9, 2003, as denied that branch of the appellant's motion which was for leave to reargue is dismissed on the ground that no appeal lies from an order denying reargument; and it is further,

Ordered that the appeals from the order entered February 5, 2003, and so much of the order entered April 9, 2003, as denied that branch of the motion which was for leave to renew are dismissed as academic in light of our determination of the appeal from the order and judgment; and it is further,

Ordered that one bill of costs is awarded to the appellant.