OPINION OF THE COURT
Richard B. Meyer, S.
The petitioner entered into a power of attorney and contingent fee contract (the fee agreement) with two separate Texas law firms, Thomas J. Henry—Injury Attorneys and Hilliard Munoz Gonzales, LLP (collectively, litigation counsel except where otherwise noted), providing for a contingent attorneys’ fee of 33.3% “figured on the total gross recovery.” By decision and order dated January 19, 2017, decision was reserved on fixing the amount of reasonable attorneys’ fees for litigation counsel in connection with prosecuting claims of the estate for the wrongful death of the decedent as the result of an alleged defective ignition switch in the General Motors vehicle operated by the decedent at the time of his tragic death on December 30, 2011. Litigation counsel was offered the opportunity to submit further information to assist this court in fixing a reasonable attorneys’ fee, and an affidavit of Michael E. Henry, Esq., sworn to on January 26, 2017, was filed.
“Courts ‘give particular scrutiny to fee arrangements between attorneys and clients,’ placing the burden on attorneys to show the retainer agreement is ‘fair, reasonable, and fully known and understood by their clients’ (Shaw v Manufacturers Hanover Trust Co., 68 NY2d 172, 176 [1986]).” (Matter of Lawrence, 24 NY3d 320, 336 [2014].) “Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written (Lawrence, 11 NY3d at 596 n 4)” (id. at 339).
Both Texas and New York have adopted, with their own modifications, the American Bar Association Model Rules of Professional Conduct. Under rule 1.04 of the Texas Disciplinary Rules of Professional Conduct, entitled “Fees”:
“(a) A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable.
“(b) Factors that may be considered in determining the reasonableness of a fee include, but not to the *992 exclusion of other relevant factors, the following:
“(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
“(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
“(3) the fee customarily charged in the locality for similar legal services;
“(4) the amount involved and the results obtained;
“(5) the time limitations imposed by the client or by the circumstances;
“(6) the nature and length of the professional relationship with the client;
“(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
“(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.”
New York’s rule (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.5) is similar, but not identical. For instance, New York’s rule on fees uses the term “excessive” in the place of “unconscionable.” In offering litigation counsel the opportunity to submit further information consistent with the foregoing rules for consideration relative to the fixing of a reasonable attorneys’ fee for litigation counsel, this court noted that
“[r]elevant factors to be considered include the time required, the difficulties involved, the nature of the services provided, the amount involved, the professional standing and ability of counsel, and the results obtained (see Matter of Freeman, 34 NY2d 1, 9 [1974]; Matter of Pekofsky v Estate of Cohen, supra at 702; Matter of Potts, 213 App Div 59, 62 [1925], affd 241 NY 593 [1925])” (Matter of Drossos, 26 AD3d 602, 603 [2006]).
“The party seeking the fee bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent and the experience of the attorneys performing each task (see Klein v Robert’s Am. Gourmet Food, Inc., 28 AD3d 63, 75 [2006]).” (Flemming v Barnwell Nursing Home & Health Facilities, Inc., 56 AD3d 162, 164-165 [2008], affd 15 NY3d 375 [2010].)
*993 “ ‘[T]he determination of what constitutes a reasonable fee involves extensive consideration of the nature and value of the services rendered by the plaintiffs’ attorneys’ (Friar v Vanguard Holding Corp., 125 AD2d 444, 447 [1986]). Although the claimant is not required to tender contemporaneously-maintained time records, ‘the court will usually, and especially in a matter involving a large fee, be presented with an objective and detailed breakdown by the attorney of the time and labor expended, together with other factors he or she feels supports the fee requested’ (Matter of Karp [Cooper], supra at 216, 537 NYS2d 510). Otherwise stated, ‘[t]he valuation process requires definite information, not only as to the way in which the time was spent (discovery, oral argument, negotiation, etc.), but also as to the experience and standing of the various lawyers performing each task (senior partner, junior partner, associate, etc.)’ (Washington Fed. Sav. & Loan Assn. v Village Mall Townhouses, 90 Misc 2d 227, 230-231 [Sup Ct, Queens County, Kassoff, J., 1977]; see also Sheridan v Police Pension Fund, Art. 2 of City of N.Y., 76 AD2d 800 [1980]).” (Klein v Robert’s Am. Gourmet Food, Inc., 28 AD3d 63, 75 [2d Dept 2006].)
The professional conduct rules of both states prohibit the division of fees between lawyers who are not in the same firm absent written notice to the client and the client’s consent. The Texas and New York rules are as follows:
Texas Rule 1.04 (f):
“A division or arrangement for division of a fee between lawyers who are not in the same firm may be made only if:
“(1) the division is:
“(i) in proportion to the professional services performed by each lawyer; or
“(ii) made between lawyers who assume joint responsibility for the representation; and
“(2) the client consents in writing to the terms of the arrangement prior to the time of the association or referral proposed, including:
“(i) the identity of all lawyers or law firms who will participate in the fee-sharing agreement, and
“(ii) whether fees will be divided based on the *994 proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and
“(iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made; and
“(3) the aggregate fee does not violate paragraph (a).”
New York Rule 1.5 (g):
“A lawyer shall not divide a fee for legal services with another lawyer who is not associated in the same law firm unless:
“(1) the division is in proportion to the services performed by each lawyer or, by a writing given to the client, each lawyer assumes joint responsibility for the representation;
“(2) the client agrees to employment of the other lawyer after a full disclosure that a division of fees will be made, including the share each lawyer will receive, and the client’s agreement is confirmed in writing; and
“(3) the fee is not excessive.”
Comment 15 to Texas rule 1.04, relating to the disclosures required to be made by counsel to a prospective client prior to the latter’s execution of a contingent fee retainer agreement providing for a division of fees, states:
“15. A client must consent in writing to the terms of the arrangement prior to the time of the association or referral proposed. For this consent to be effective, the client must have been advised of at least the key features of that arrangement. Those essential terms, which are specified in subpara-graph (f) (2), are 1) the identity of all lawyers or law firms who will participate in the fee-sharing agreement, 2) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and 3) the share of the fee that each lawyer or law firm will receive or the basis on which the division will be made if the division is based on proportion of service performed. Consent by a client or prospective client to the referral to or association of other counsel, made prior to any *995 actual such referral or association, but without knowledge of the information specified in subpara-graph (f) (2) does not constitute sufficient client confirmation within the meaning of this rule. The referring or associating lawyer or any other lawyer who employs another lawyer to assist in the representation has the primary duty to ensure full disclosure and compliance with this rule.”
“Agreements that are not unconscionable at inception may become unconscionable in hindsight, if ‘the amount becomes large enough to be out of all proportion to the value of the professional services rendered’ (King, 7 NY3d at 191) ...[,] meaning] . . . that ‘the amount of the fee, standing alone and unexplained, may be sufficient to show that an unfair advantage was taken of the client or, in other words, that a legal fraud was perpetrated upon him’ (Gair v Peck, 6 NY2d 97, 106 [1959] [internal quotation marks and citation omitted]).” (Matter of Lawrence at 339.)
“ ‘[T]he recovery may be such that what was in the first instance, a fair contract becomes unfair in its enforcement. . . . the recovery may be such that the lawyer’s retention of it would be unjustified, and would expose him to the reproach of oppression and overreaching. He is an officer of the court, and is judged as such, and technical contractual rights must yield to his duty as such officer.’ In the decisions on this subject, of which there are many, it is recognized throughout that there comes a point where the amounts to be received by attorneys under contingent fee contracts are large enough to be unenforcible under the circumstances of the case. Sometimes these charges are unconscionable as matter of fact and in other instances as matter of law (Ford v. Harrington, 16 N.Y. 285; Place v. Hayward, 117 N.Y. 487; Matter of Fitzsimons, 174 N.Y. 15; Morehouse v. Brooklyn Heights R.R. Co., 185 N.Y. 520; Matter of Friedman, 136 App. Div. 750, affd. 199 N.Y. 537, supra; Ward v. Orsini, 243 N.Y. 123).” (Gair v Peck, 6 NY2d 97, 107 [1959], remittitur amended 6 NY2d 983 [1959].)
“[H]indsight analysis of contingent fee agreements not unconscionable when made is a dangerous business, especially when a determination of unconscio- *996 nability is made solely on the basis that the size of the fee seems too high to be fair (see In re Smart World Tech., LLC, 552 F3d 228, 235 [2d Cir 2009]” (Matter of Lawrence at 340).
Thus,
“ The power to invalidate fee agreements with hindsight should be exercised only with great caution’ because it is not ‘unconscionable for an attorney to recover much more than he or she could possibly have earned at an hourly rate’ (id.). In fact,
“ ‘the contingency system cannot work if lawyers do not sometimes get very lucrative fees, for that is what makes them willing to take the risk—a risk that often becomes reality—that they will do much work and earn nothing. If courts become too preoccupied with the ratio of fees to hours, contingency fee lawyers may run up hours just to justify their fees, or may lose interest in getting the largest possible recoveries for their clients’ (id.).” (Matter of Lawrence at 339.)
Review of the fee agreement between the administratrix and litigation counsel reveals that there is no provision regarding the division of fees between the two separate Texas law firms serving as litigation counsel, nor is there any provision stating that the two firms “assume joint responsibility for the representation” as required by either Texas rule 1.04 (g) or New York rule 1.5 (f). Moreover, nothing in the petition before this court, or in the Henry affidavit subsequently filed, discloses that the administratrix, prior to executing the fee agreement, ever discussed the division of fees with either Texas firm or was informed of their “joint representation.”
According to a closing statement submitted with a proposed order by petitioner’s counsel, the gross settlement proceeds consist of $5,336,830.75 to be paid by the Settlement Administrator and $167,240.57 designated as “initial proportionate share of administrative costs account proceeds,” for a total gross settlement amount of $5,504,071.32. From that sum, the administrative cost account proceeds are to be reimbursed to “the Special Master, Lien Resolution Administrator (Shapiro Settlement Solutions), and the Claim Administrator (The Settlement Alliance)” for work performed “related to evaluating claims, lien research and resolution, and claims administration as part of the aggregate settlement.” Also to be paid from the *997 settlement proceeds are a “court-ordered common benefit fee assessment” totaling $165,122.14. From the remaining balance of $5,171,708.61, litigation,counsel seeks fee compensation in the amount of $1,722,774.32, representing 32.2% of the remaining settlement proceeds. This fee is to be shared equally by both litigation counsel, each firm receiving $861,387.16. Litigation counsel are also to be reimbursed $28,148.71 in expenses advanced, with $14,830.61 of those expenses being represented to be case-specific and the remaining $13,318.10 being designated as “General Expenses—Proportional Share of Total.” Of the case-specific expenses, the Henry firm will be reimbursed $2,199.73 and the Hilliard firm will receive $12,630.88. The general expenses are allocated $3,822.17 to Henry and $9,495.93 to Hilliard. The total compensation sought by the Henry firm is $867,409.06, while the Hilliard firm seeks $883,513.97.
The underlying claims of the estate involve an alleged defective ignition switch which is the subject of multi-district federal litigation (MDL) which has been centralized for pretrial proceedings in the United States District Court for the Southern District of New York. According to official documents filed in that court, specifically order No. 8 dated and entered August 15, 2014, litigation counsel (Hilliard Munoz Gonzales, LLP) is one of the co-lead counsel in the MDL 2543 Leadership, and as such is a “Participating Counsel” as defined in order No. 13 dated and entered September 16, 2014. Under order No. 13,
“[participating counsel shall keep contemporaneous billing records of the time spent in connection with Common Benefit Work on this MDL, indicating with specificity the hours and billing rate, along with a brief note indicating the source of authorization for the activity in question and a brief description of the particular activity . . . ,” with time submissions to be made on a monthly basis.
“Common Benefit Work” is defined to include conducting depositions of fact and expert witnesses, review of discovery and documents, attendance at and participation in MDL status conferences and hearings, identification and work-up of experts, attendance at seminars, participation in periodic conference calls, review of court filings and orders, and reviewing emails and correspondence. On March 26, 2015, the federal court issued order No. 42 which established a common benefit fee and expense fund, one of the purposes of which was to “re *998 imburse and pay Participating Counsel (as defined in Order No. 13 [14-MD-2543 Docket No. 304]) for reasonable and necessary time and expenses spent on Common Benefit Work.” Order No. 13 provides for litigation counsel to be reasonably and fairly compensated for their work as co-lead and participating counsel from the common benefit fee and expense fund based upon their submission of the contemporaneous time records required by that order.
In the Henry affidavit there are a number of legal services summarized that appear to constitute Common Benefit Work under the MDL orders, such as: correspondence and completion of a “Plaintiff Fact Sheet and authorizations as required by Multi-District Litigation Order No. 25”; reviewing answers to the fact sheet, obtaining signatures for the fact sheet authorizations “to turn over to Defendants”; “[participating in Bellwether selection process by negotiating process [sic], reviewing and presenting potential Bellwether cases and reviewing and striking cases presented by defendants”; “[p] reparing for and attend hearings and status conferences in the Southern District of New York on behalf of all clients, including the Estate of Ryan Quigley”;* “[researching, drafting, and filing required documents, including letter briefs for hearings”; and “[p]reparing for, attending, and taking or defending depositions of fact witnesses, expert, and third-party witnesses, totaling approximately 98 automobile manufacturer employee fact witness [sic] and 25 expert witnesses.” Furthermore, the affidavit avers that time was expended “[f]iling a lawsuit on behalf of the estate for injuries sustained from a manufacturer’s auto defect.” However, paragraph 9 of the petition verified by the administratrix avers that “[t]he settlement was reached not as a result of a public court case, but rather from an out-of-court administration process established to streamline claims brought by certain General Motors LLC claimants.” Neither the affidavit nor the petition disclose whether, subsequent to her executing the fee agreement, the administratrix was aware that litigation counsel represented other litigants/claimants with similar causes of action based upon the same defective ignition switch device, or that litigation counsel would receive separate compensation from the MDL common benefit fee and expense fund for many of the *999 same services for which they would be, and now are, claiming to have earned compensation under the fee agreement.
When taking into consideration the fact that the Hilliard firm will be compensated separately from the MDL common benefit fee and expense fund for most of the services referenced in the Henry affidavit, the legal services rendered to the administratrix here is limited to preparing and filing a claim with the Ken Feinberg Compensation Fund, negotiating a settlement, advising the administratrix of a settlement offer, and obtaining execution of the settlement documents. Litigation counsel has not made any effort to provide this court with any breakdown of the time expended in representing the estate here despite inclusion in the Henry affidavit of a number of services and activities performed and engaged in by litigation counsel directly related to the MDL. Also, because settlement of the estate’s claims here were “reached not as the result of a public court case, but rather from an out-of-court administration process established to streamline claims brought by certain General Motors LLC claimants . . . [that] promotes quick and efficient recovery for valid claimants” (petition ¶ 9), there is nothing before the court demonstrating the amount of time expended by litigation counsel over and above that which was spent in the MDL when calculating the reasonableness of its fee request. Similarly, there is no information before the court indicating that the administratrix has been advised of the amount of compensation received by litigation counsel from the MDL fund for MDL work claimed in the Henry affidavit as a basis for the requested fee. There is also no evidence, or allegation, that litigation counsel’s MDL efforts have not been, or will not be, fairly, adequately, or reasonably compensated from the common benefit fee and expense fund, nor that those efforts had any unique or particular bearing or relevance upon the presentation and settlement of the estate’s claims by the claims administrator.
Whether $1.722 million “is an unreasonably excessive fee depends on a number of factors, primarily the risk to the attorneys and the value of their services in proportion to the overall fee.” (Matter of Lawrence, 24 NY3d at 339.) Due to the paucity of information provided by litigation counsel, the disputed assertion that litigation counsel filed a lawsuit on behalf of the estate, the undocumented claim of services performed on behalf of the estate in the context of the MDL together with the fact that litigation counsel will be compen *1000 sated for its MDL work under order No. 13, the lack of any information revealing the need to retain one or more experts to substantiate the estate’s claim, and what appears to be the provision of very limited legal services consisting solely of the preparation and submission of a claim to the out-of-court settlement administrator and negotiating its resolution, this court cannot approve the requested fee. The determination of whether the requested attorneys’ fee of $1,722,774.32 is reasonable, or constitutes an unreasonably excessive fee, requires a hearing to be held on April 20, 2017, at 9:30 a.m.
Finally, the proposed settlement order does not comply with EPTL 5-4.6 (a) (1), which requires that
“the defendant. . . pay all sums payable under the order of compromise, within the time frames set forth in section five thousand three-a of the civil practice law and rules, to the attorney for the administrator or personal representative for placement in an interest bearing escrow account for the benefit of the distributees,” and that
“[u]pon collection of the settlement funds and creation of an interest bearing escrow account, the attorney for the administrator or personal represent-atative shall pay from the account all due and payable expenses, excluding attorneys fees, approved by the court, such as medical bills, funeral costs and other liens on the estate.”
Only after all such amounts are paid may attorneys fees be paid (EPTL 5-4.6 [a] [2]). It is unclear under the proposed order to whom the settlement proceeds will be paid, and who will pay, by wire transfer or other method, the monies due the administrative costs account and for the common benefit cost assessment. Under the foregoing statute, it is the attorney for the estate administrator who is to receive all settlement proceeds and pay such amounts. The attorney for the estate is directed to furnish any documents governing the out-of-court settlement process and which relate to how and to whom settlement proceeds are to be paid since those may supercede EPTL 5-4.6 under the doctrine of federal preemption and supremacy.

 It is unclear how or why the estate’s wrongful death claims, if no lawsuit was brought therefor, would be the subject of hearings and status conferences in the MDL.