OPINION OF THE COURT
Stephen A. Bucaria, J.
This motion, by co-lead plaintiffs, for attorneys’ fees and expenses is granted to the extent that a hearing is ordered.
This is a class action on behalf of Cablevision’s minority shareholders.
Cablevision was founded by defendant Charles F. Dolan in the 1970s. Its successor, Cablevision Systems Corporation, has grown into one of the nation’s leading entertainment and telecommunications companies. Plaintiffs Louisiana Municipal Police Employees’ Retirement System, City of Brockton Retire *421 ment System, and NECA-IBEW Pension Fund are pension funds which hold common stock in Cablevision. Although Cablevision is publicly held, the Dolan family remains in control of the company.
On June 19, 2005, members of the Dolan family submitted a written merger proposal to Cablevision’s board. The proposal called for the Dolans to take the cable and telecommunications business private by offering nonaffiliated shareholders cash of $21 per share. The nonaffiliated shareholders would also receive a pro rata equity interest in a “spin-off” company, Rainbow Media Holdings, to which would be transferred the programming, sports, and entertainment assets of Cablevision. However, the nonaffiliated shareholders would not participate in the cable/telecommunications company. The proposal stated that the Dolans “anticipated” that the board would form a “special committee” of independent directors to respond to the proposal on behalf of the unaffiliated stockholders.
On June 21, two days after receiving the Dolans’ proposal, the board appointed three independent directors as a special transaction committee to evaluate the proposal and make recommendations concerning it to the unaffiliated shareholders. The independent directors who were appointed to the special committee were defendants Thomas Reifenheiser and John Ryan. The special committee retained the law firm of Willkie Farr & Gallagher, which was outside counsel to the independent directors, to act as counsel for the special committee.
Shortly after the Dolan family proposal was made, a number of shareholder class action lawsuits were filed against Cablevision and its individual directors. The shareholder suits were brought in the US District Court for the Eastern District of New York, Delaware Chancery Court, and Supreme Court, Nassau County. The complaints alleged breaches of fiduciary duty by Cablevision’s directors and claimed that the proposal was unfair to shareholders who were not affiliated with the Dolans. The present plaintiffs were not named plaintiffs in any of those actions.
On July 8, 2005, the special committee engaged two investment banking firms, Lehman Brothers and Morgan Stanley, to act as its financial advisors. Based upon analysis by the invest,ment bankers, the special committee concluded that Cablevision’s cable and telecommunications business was worth considerably more than $21 per share and the value assigned to the spin-off entity was overstated. On October 24, 2005, the Dolans withdrew their proposal.
*422 At the same time that they withdrew their proposal, the Dolans recommended that the board declare a special dividend in the amount of $3 billion, payable pro rata to all shareholders. On November 17, 2005, the plaintiffs in the Nassau County action filed an amended complaint, alleging that the proposed special dividend constituted a breach of fiduciary duty in that it weakened the financial position of the company. A shareholder derivative action based on the proposed special dividend was also filed in the Eastern District Court.
On March 24, 2006, pursuant to a contemplated settlement of the pending actions, the board appointed Reifenheiser and Ryan as a special committee to consider the request for a special dividend and make recommendations to the board. The special dividend committee retained Willkie Farr as its counsel and Morgan Stanley as its financial advisor. On April 7, 2006, based on the recommendation of the committee, the board declared a special cash dividend in the amount of $10 per share. The dividend was funded by the proceeds of a $3 billion term loan borrowed by Cablevision’s subsidiary, CSC Holdings. Following the declaration of the dividend, the Nassau County and Eastern District lawsuits arising from the proposed dividend were dismissed pursuant to the settlement.
On October 8, 2006, the Dolans wrote to the board offering to purchase the publicly-held shares of Cablevision Class A common stock for $27 per share. In their proposal, the’Dolans stated that they had no interest in selling their ownership interest in Cablevision. The following day, the board appointed Reifenheiser and Ryan as a special committee to evaluate the new proposal, and the special committee retained Willkie Farr & Gallagher as its counsel. On October 10, the Dolans filed an amendment to their Schedule 13D with the United States Securities and Exchange Commission (SEC), disclosing the merger proposal. On October 17, 2006, the special committee retained Lehman Brothers and Morgan Stanley to act as its financial advisors with respect to the new proposal.
Meanwhile, on October 16, 2006, plaintiff Louisiana Municipal Police Employees’ Retirement System and plaintiff Brock-ton Retirement System filed a class action complaint on behalf of Cablevision’s minority shareholders, claiming that the controlling shareholders were involved in an unlawful scheme to acquire the minority shares for inadequate consideration. Plaintiffs asserted that the special committee lacked the impartiality necessary to protect the minority shareholders. *423 Plaintiffs further asserted that the special dividend, which had allowed the Dolans to finance the all-cash offer, weakened the financial position of the company. Plaintiffs requested certification as a class action, injunctive relief to prevent consummation of the transaction, a declaration that defendants had breached their fiduciary duties, and compensatory damages based upon the fair value of their shares.
The Louisiana Municipal Police Employees’ fund was represented by the law firm of Bernstein Litowitz Berger & Grossmann. The City of Brockton fund was represented by the firm of Labaton Sucharow & Rudoff. The firm of Jaspan Schlesinger Hoffman was “liaison counsel” for the proposed class of shareholders. Although five separate class actions were filed, the cases were consolidated into the present action on November 3, 2006. Among the consolidated actions was a suit filed by plaintiff NECA-IBEW Pension Fund. NECA-IBEW was represented by Coughlin, Stoia, Geller Rudman & Robbins. The four law firms are joining in the present fee application.
On October 24, 2006, counsel for plaintiffs served a request for production of documents, seeking documents relating to the proposed transaction including valuation analyses. On the same date, counsel for plaintiffs also moved for expedited discovery in order to obtain the requested documents before the proposed transaction was put to a vote of the stockholders. The motion for expedited discovery was granted by the court on November 20, 2006.
On December 8, 2006, Lehman Brothers and Morgan Stanley submitted a presentation to the special committee, concluding that a price of $27 per share appeared low based on most valuation analyses. For example, a valuation based on “cost of capital” implied a value of $32 to $39 per share. A valuation based upon “minimum equity” implied a value of $31 to $40, and a “leveraged buyout analysis” implied a range of $39 to $44 per share. On January 4, 2007, plaintiffs’ valuation expert, Stout Risius Ross, submitted a presentation to the special committee, finding that Cablevision’s stock was worth between $35.19 and $43.44 per share. Stout Risius’s estimate was based upon the “enterprise value” and “sum-of-the-parts” methods of valuing a company. On January 5, 2007, plaintiffs presented their analysis to counsel for the Dolans.
On January 12, 2007, the Dolans wrote to the special committee and increased their offer to $30 per share. The Dolans characterized this offer as their “best and final price” and stated *424 that the offer would expire at the close of business on January 17, 2007. The Dolans stressed that the revised offer price represented a premium of 25.4% over the trading price of Cablevision Class A common stock immediately prior to the announcement of the initial proposal.
In response to the Dolans’ letter, counsel for plaintiffs sent a fax to the special committee on January 12, noting that the revised offer was still below the valuation levels discussed in plaintiffs’ January 4 presentation. Counsel for plaintiffs urged the special committee to continue to negotiate with the Dolan family for a higher price. Counsel also encouraged the committee to discuss “some type of protection or participation” for the stockholders in the event that the Dolans acquired the company and liquidated the assets at a premium. On January 12, the special committee met with its legal and financial advisors and determined that the revised offer did not represent a fair price for unaffiliated shareholders.
On January 16, 2007, the special transaction committee rejected the Dolans’ offer. On January 18, counsel for plaintiffs wrote to counsel for the Dolans urging them to raise their offer. Counsel for plaintiffs offered to provide their analysis to the Dolans on “an ongoing basis” and requested the Dolans to continue discussions with both lead plaintiffs and the special transaction committee.
Following the letter from plaintiffs’ counsel, negotiations between the Dolans and the special committee continued. In mid-March 2007, the Dolans requested that the special committee put forward a “valuation,” which could provide the basis for further discussion. On April 3, 2007, the special committee stated that it would consider only a transaction which valued Cablevision stock in excess of $33 per share and provided the unaffiliated stockholders with some continuing participation in Cablevision’s value following the closing.
On April 12, the Dolans advised the special committee that their objective was to take Cablevision private and they would not consider any proposal involving public stockholder participation in Cablevision following the closing. The Dolans further indicated that they would not accept an “equity partner,” nor would they consider any “asset sales to increase the merger price.” The Dolans requested the special committee to indicate a valuation which they would consider in light of the position taken by the Dolans.
On April 18, 2007, the special committee advised the Dolans that it would consider a proposal valuing Cablevision in excess *425 of $36 per share, subject to the negotiation of an acceptable merger agreement. On April 19, the Dolans’ counsel, Debevoise & Plimpton, and the special committee’s counsel, Willkie Farr, began to discuss the terms of a merger agreement and to revise a draft which had originally been distributed the previous November.
During the week of April 23, 2007, there were substantial negotiations regarding the merger agreement among the legal advisors to the special committee, the legal advisors to the Dolans, and the lawyers representing the plaintiffs. As a result of these negotiations, the Dolans agreed to a number of concessions on the terms of the merger agreement, including: (1) personal guarantees by Charles F. Dolan and James L. Dolan of the liability of the “buying” corporations for “material and willful breach” of the merger agreement in the amount of $100 million; (2) a “majority of the minority” provision, requiring that the merger be approved by a majority of the outstanding shares not held by the Dolans, parties related to them, or executive officers and directors of Cablevision; (3) a substantial limitation on the scope of Cablevision’s representations and warranties; (4) an expansion of the special committee’s right to change its recommendation concerning the merger; and (5) removing any obligation of Cablevision to pay a “break up fee,” if the special committee changed its recommendation.
On April 27, 2007, the special committee sought assurances from the Dolans that they had not engaged in any recent discussions regarding a sale of a substantial amount of Cablevision stock or assets. Such discussions on the part of the Dolans would have suggested a greater value for the company. Counsel for plaintiffs also sought such assurances from the Dolans.
On April 30, 2007, the special committee met again with its legal and financial advisors. At the meeting, representatives of the special committee indicated that the personal guarantees were too limited. Lead counsel for the plaintiffs had also voiced concern with regard to the adequacy of the guarantees and expressed their concern to counsel for the Dolans. The special committee was of the view that if the “acquisition vehicle” remained unfunded, the guarantee by the Dolans should exceed $100 million. The guarantee was necessary because of the possibility that the Dolans would enter into an “alternative transaction,” such as purchasing less than all the stock or selling their interest in the company.
On May 1, the Dolans agreed to increase the amount of the guarantee of the acquisition vehicle to $200 million. The Dolans *426 also agreed to provide notice of any “material transaction” involving Cablevision, which would permit the special committee to change its recommendation to the unaffiliated stockholders. The merger agreement was also to contain a representation by the Dolans regarding the absence of any “material negotiations,” or of any current plan by the Dolans, to sell Cablevision or its material assets other than in connection with the merger. During the evening of May 1 and the early morning of May 2, 2007, representatives of the plaintiffs met with representatives of the defendants to discuss possible resolution of the present action. In August and September 2006, five derivative actions had been filed in this court based on the alleged backdating of options which had been granted to certain officers and directors of Cablevision. It appears that the purpose of backdating the options was to give the officer or director the opportunity to purchase stock in the company at a price below the market price. Representatives of the plaintiffs in the options backdating actions were also involved in the settlement discussions.
As a result of the discussions with representatives of the plaintiffs in the present action and the suit based on the backdated options, the Dolans increased their offer to $36.26 per share. This represented an increase of $30 million in the merger consideration offered by the purchasers. The Dolans further agreed to guarantee the obligations of the acquisition vehicle up to $300 million based upon a material breach under the merger agreement. Finally, the parties reached an agreement in principle for the dismissal of the present action and transfer to the surviving corporation of the options backdating claims, subject to the approval of the settlement by this court.
The special committee met with its legal and financial advisors and initially decided to respond with a counterproposal of $36.50 per share. The Dolans responded that they would not increase their offer price, and, if a deal were not reached that morning, they would rescind their proposal. At the request of the special committee, the financial advisors issued an oral opinion that the price was “fair from a financial point of view” to the unaffiliated shareholders. The special committee then approved the transaction and recommended approval to the board of directors. Later that day, on May 2, 2007, the board followed the special committee’s recommendation and approved the merger.
On June 14, 2007, the parties executed a written memorandum of understanding, reflecting the settlement of the present *427 action and the actions based on the backdated options. In the memorandum of understanding, defendants acknowledged that counsel for plaintiffs in the present action participated substantively in negotiations to improve the financial terms and certain provisions in the proposed merger agreement that seek to enhance and protect the rights of Cablevision public shareholders. Defendants further acknowledged that counsel for plaintiffs “played a substantial role,” and that “Cablevision’s public stockholders received valuable procedural and contractual protections and the opportunity to accept an offer for their shares that exceeds the offer made on October 8, 2006 by over $2 billion.”
In the memorandum of understanding, the parties agreed to engage in good faith negotiations to reach an appropriate agreement for the fees and reimbursable expenses of plaintiffs’ counsel. In the event that the parties reached “an acceptable accord,” defendants agreed not to contest plaintiffs’ application for attorneys’ fees and expenses up to the amount provided in the accord. Cablevision undertook to pay into an escrow account controlled by co-lead counsel for plaintiffs all such fees approved by the court. However, the memorandum of understanding provided that the memorandum of understanding and the settlement would be null and void if the merger was not consummated or final court approval was not obtained.
In a “definitive proxy statement” filed on September 14, 2007, the board and the special committee recommended approval of the merger to the shareholders. The proxy statement recited that the participation of plaintiffs’ counsel in the negotiations had resulted in the five main concessions by the Dolans concerning the terms of the merger agreement. The proxy statement further recited that the participation of plaintiffs’ counsel had resulted in the Dolans’ increase of their offer to $36.26 per share. The proxy statement disclosed that plaintiffs’ counsel intended to request an award for fees and expenses of $29.25 million. The proxy statement also disclosed that defendants had agreed not to challenge the application, and Cablevision had agreed to pay the amount approved by the court, following completion of the merger. In the proxy statement, the special committee gave their reasons for recommending the merger, including that the $36.26 share price represented a 51.5% premium over the closing price at the time of the October 8 proposal.
On September 18, 2007, co-lead counsel for plaintiffs entered into a “stipulation of compromise and settlement” with counsel *428 for the Dolans, counsel for the special committee, and counsel for Cablevision. The stipulation recited that counsel for plaintiffs had participated in “extensive negotiations relating to the various claims” and had “completed reasonable additional discovery.” The stipulation further recited that plaintiffs’ co-lead counsel had determined that the settlement was fair, reasonable, and “in the best interests of the class.” The stipulation defined the “class” as all record and beneficial owners of Cablevision common stock during the period from and including April 18, 2006 through and including October 4, 2007, but not including the defendants. The stipulation defined “plaintiffs’ co-lead counsel” as the law firms of Bernstein Litowitz, Labaton Sucharow, and Coughlin Stoia “as appointed by this court as co-lead counsel for the class in this action.” Jaspan Schlesinger was not included within the definition of “co-lead counsel” and indeed was not referred to in the stipulation.
In the stipulation, defendants acknowledged that the prosecution of the action and the active participation of plaintiffs’ co-lead counsel contributed to defendants’ improving the terms of the merger to the benefit of Cablevision’s public shareholders and the class. Defendants further acknowledged that the public stockholders received “valuable procedural and contractual protections and the opportunity to accept an offer for their shares that exceeds the 2006 Dolan Family Group Acquisition Proposal by over $2 billion.” Pending final court approval, the stipulation provided for the release of all claims that have been or could have been asserted and the “full and final disposition and dismissal of this action.” The stipulation recited that plaintiffs’ co-lead counsel intended to apply for an award of attorneys’ fees and expenses of $29.25 million and Cablevision agreed to pay that amount, following completion of the merger. Finally, the stipulation provided that it would not become effective until various conditions had been satisfied, including “consummation of the merger.”
On September 25, 2007, this court issued an “order regarding proposed class action settlement, settlement hearing, and notice of proposed settlement.” The order provided that for purposes of settlement only the action was conditionally certified as a class action, with the named plaintiffs as class representatives. The order provided that Cablevision was to provide notice of the proposed settlement to the class members. Each member of the class would be bound by all determinations and judgments in the action, whether favorable or unfavorable. Finally, the order *429 provided that a hearing would be held on December 4, 2007 to determine whether the proposed settlement was fair and reasonable and to consider the application of counsel for plaintiffs and the class for an award of attorneys’ fees and expenses.
On October 24, 2007, a majority of Cablevision’s unaffiliated shareholders failed to approve the merger. On that day, Cablevision’s stock was trading considerably below the buyout price of $36.26 and fell as low as $31 per share. According to a New York Times article, two major shareholders, Mario Gabelli and T. Rowe Price, opposed the merger because of their concern that the Dolans would be able to resell the company for a higher price a year or two after the merger. The article also suggested that Gabelli’s opposition to the merger may not have been based on purely economic considerations.
In view of the rejection of the merger by the shareholders, the December 4 hearing to approve the stipulation of settlement was not held as scheduled. Nonetheless, plaintiffs’ counsel have submitted the present application for attorneys’ fees and expenses. Defendants oppose the application, arguing that they have no obligation to pay attorneys’ fees because of the failure of the stockholders to approve the merger.
The usual “American Rule” is that attorneys’ fees are incidents of litigation, and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute, or court rule (Baker v Health Mgt. Sys., 98 NY2d 80, 88 [2002]). As one of the major exceptions to the American Rule, CPLR 909 provides for attorneys’ fees in class action litigation. CPLR 909 provides,
“If a judgment in an action maintained as a class action is rendered in favor of the class, the court in its discretion may award attorneys’ fees to the representatives of the class based on the reasonable value of legal services rendered and if justice requires, allow recovery of the amount awarded from the opponent of the class.”
Defendants assert that an award of attorneys’ fees is not authorized by CPLR 909 because a class was never certified, there was no judgment in favor of the class, no common fund was created, and defendants were not in bad faith.
The court’s order of September 25, 2007 conditionally certified the action as a class action for purposes of settlement with the named plaintiffs as class representatives. However, certification pursuant to the stipulation terminated upon the sharehold *430 ers’ failure to approve the merger. The first issue for the court to consider is whether the action may be “re-certified” as a class action for purposes of the present fee application.
CPLR 902 provides that,
“[wjithin sixty days after the time to serve a responsive pleading has expired for all persons named as defendants in an action brought as a class action, the plaintiff shall move for an order to determine whether it is to be so maintained. An order under this section may be conditional, and may be altered or amended before the decision on the merits on the court’s own motion or on motion of the parties.”
Since the record does not establish when defendants were served, it cannot be determined precisely when their responsive pleadings were due (see CPLR 3012 [a]). However, all of the defendants had clearly appeared as of October 24, 2006, when plaintiffs served their amended first request for production of documents. Thus, an application for class certification should probably have been made by December 24, 2006. In any event, plaintiffs did not timely move for class certification.
A plaintiff who has obtained partial summary judgment as to liability without a timely motion for class certification will be precluded from subsequently seeking relief as a class action (O’Hara v Del Bello, 47 NY2d 363 [1979]; see also Shah v Wilco Sys., Inc., 27 AD3d 169 [1st Dept 2005] [filing deadline is mandatory]). The explicit design of CPLR article 9, and of its prototype, rule 23 of the Federal Rules of Civil Procedure, is that “a determination as to the appropriateness of class action relief shall be promptly made at the outset of the litigation” (O’Hara, 47 NY2d at 368). To allow a motion for class certification after a finding of liability would be to confer a “gratuitous benefit” on persons who have not been parties and were not exposed to the risk of an adverse adjudication (id. at 369). Moreover, retroactive class certification might “substantially enlarg[e] the liability of the loser” beyond what was contemplated during the liability determination (id.). Furthermore, the resolution on the merits might affect the determination as to class action status (id.).
The concern that nonparties will receive a windfall if class certification is granted at the close of the action does not apply to an attorneys’ fee application. There has as yet been no determination “on the merits” as to whether counsel obtained a ben *431 efit for the putative class members. Certification will not expand defendants’ liability for attorneys’ fees beyond what was contemplated because Cablevision was prepared to pay substantial fees if the merger was consummated.
Early class action determination is certainly “desirable” (Alexander v Aero Lodge No. 735, Intl. Assn. of Machinists & Aerospace Workers, AFL-CIO, 565 F2d 1364, 1372 [6th Cir 1977]). Moreover, a named plaintiffs failure to move promptly for class certification has a bearing on the adequacy of the party’s class representation (CPLR 901 [a] [4]; Alexander, 565 F2d at 1371). However, “[o]ne of the strengths of CPLR article 9 is its flexibility” (Matter of Colt Indus. Shareholder Litig., 77 NY2d 185, 196 [1991]). Thus, with respect to an application for attorneys’ fees, unless the protesting party makes “a showing of actual prejudice,” class action determination may be delayed until the hearing of the application (Alexander, 565 F2d at 1372).
The court notes that plaintiffs did not mislead defendants as to their intention to proceed as a class action. Indeed, the class was conditionally certified for purposes of settlement. Defendants have made no showing as to how they were actually prejudiced by plaintiffs’ failure to make a prompt motion for class certification. The court does not condone plaintiffs’ failure to comply with CPLR 902. Nonetheless, the court concludes that plaintiffs may seek class recertification for the purpose of their attorneys’ fee application.
The court will next consider whether plaintiffs have satisfied the prerequisites to a class action under CPLR 901, albeit most of the criteria must receive a retrospective application. The putative class is defined as all unaffiliated shareholders of Cablevision Class A stock who were eligible to vote on the proposed merger. The court concludes that the Class A stockholders were so numerous that joinder was impracticable. There were questions of law or fact common to the class, namely, whether the initial offering price of $27 per share was inadequate and whether defendants breached their fiduciary duties with respect to the offer. There was a divergence of opinion between the named plaintiffs and the majority of the Class A shareholders as to whether the final offering price of $36.26 was fair. Nevertheless, the shareholders were in general agreement that the initial price of $27 per share was inadequate. Thus, the court concludes that the claims of the representative parties were typical of the class.
As noted, plaintiffs’ failure to move promptly for certification reflects adversely on the adequacy of their representation. Nev *432 ertheless, the named plaintiffs are not “figureheads.” Rather, plaintiffs are institutional investors with significant holdings in Cablevision and the “incentive to make sure that class counsel [were] doing a good job prosecuting their claims” (In re Cendant Corp. Sec. Litig., 404 F3d 173, 192 [3d Cir 2005]). Thus, the court concludes that the representative parties adequately represented the interests of the class, regardless of whether a majority of the class accepted the merger. Finally, a class action is superior to other available methods for adjudication of the remaining issue, namely, whether plaintiffs’ attorneys succeeded in obtaining a substantial benefit for the Class A stockholders. Accordingly, the action is certified as a class action, and the named plaintiffs are designated as the class representatives.
Although no judgment has been entered in favor of the class and no “common fund” has been created, plaintiffs will have obtained a “favorable judgment” if they conferred a substantial benefit on the class members. The “common fund” doctrine allows for an award of counsel fees out of a common fund actually created by a successful shareholder litigation (Seinfeld v Robinson, 246 AD2d 291, 294 [1st Dept 1998]). While only a handful of shareholders may have initiated the lawsuit, all the shareholders will participate in the monetary benefit and all should bear a share of the cost {id.). Where a shareholder brings a class action on behalf of the other shareholders and obtains an increase in the price paid upon a buyout of their interests, a “common fund” is created and the shareholder is entitled to an attorneys’ fee award (Wininger v SI Mgt. L.P., 301 F3d 1115 [9th Cir 2002]).
In Seinfeld, the Appellate Division explained that the “substantial benefit” rule has been articulated primarily by the federal courts as an extension of the common fund doctrine. Thus, in a shareholder litigation, the plaintiff shareholders are entitled to an award of attorneys’ fees if they confer a substantial benefit on the corporation or the other shareholders (246 AD2d at 295). The benefit need not have a “readily ascertainable monetary value” (id.). For example, where minority shareholders successfully establish that a prosy solicitation for an upcoming merger is materially misleading, they have conferred a substantial benefit on the corporation (id., citing Mills v Electric Auto-Lite Co., 396 US 375 [1970]). Because of “the importance of fair and informed corporate suffrage,” the shareholders “rendered a substantial service to the corporation and its shareholders” (id., quoting Mills, 396 US at 396).
*433 Where the shareholder confers a benefit of this nature, an award of attorneys’ fees is permissible in order to avoid unjust enrichment (id.). “To allow others to obtain full benefit from the plaintiffs efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiffs expense” (id., quoting Mills, 396 US at 392). Counsel fees may be awarded based on benefits resulting from litigation efforts even where there had been a settlement and adjudication on the merits had not been reached (id. at 296). While many cases use the term “substantial benefit,” the overriding concern in awarding attorneys’ fees is equitable considerations {id. at 297).
In a shareholder class action, a substantial benefit may be conferred even if the benefit is contingent and the other shareholders in effect negate part of the value of counsel’s efforts by failing to accept the benefit obtained on their behalf (Koppel v Wien, 743 F2d 129 [2d Cir 1984]). In Koppel, a participant in a real estate venture brought suit on behalf of the other participants to block a proposed amendment to the participation agreement, which would have reduced the amount received by the participants upon a buyout of their interests. Although defendants withdrew their proposed modification, 70% of the participants voluntarily agreed to accept a lower buyout at a future date. Nevertheless, the court held that even though a majority of the participants chose not to accept the benefit, the creation of a “contingent benefit” triggered an “immediate right” to an attorneys’ fee award {id. at 134). Thus, plaintiff was entitled to an attorneys’ fee award even though the buyout had not yet been “consummated” {id. at 133).
In the case at bar, it is not clear that the “concessions” in the merger agreement were of any value to the shareholders because the merger itself was rejected. However, the increase in the share price, even though it was contingent upon approval of the merger, was clearly a substantial benefit. That a majority of the shareholders chose to vote down the merger and reject the benefit does not defeat plaintiffs’ right to seek an attorneys’ fee award.
In order to recover attorneys’ fees, plaintiffs must establish that their suit was a proximate cause of the benefit obtained {id. at 135). Thus, plaintiffs must establish that their suit was a substantial cause of the Dolans increasing the share price. Defendants claim that plaintiffs’ counsel merely “stood in the shadows” while the Dolans and the special committee negoti *434 ated in “good faith.” However, defendants represented in the memorandum of understanding, the stipulation of settlement, and the proxy statement that plaintiffs’ attorneys participated in the negotiations and their efforts contributed to the increase in the share price. Defendants’ representations in the memorandum of understanding and the stipulation of settlement became void upon the stockholders’ rejection of the merger. However, statements to administrative agencies may give rise to judicial estoppel (Holtz v Rockefeller & Co., Inc., 258 F3d 62, 81 [2d Cir 2001]). Because the proxy statement was filed with the SEC, defendants are judicially estopped from denying that plaintiffs’ counsels’ efforts were a substantial cause in achieving the increase in the price per share.
While plaintiffs are entitled to an attorneys’ fee award, the court must carefully scrutinize the application. When class action settlements and attorneys’ fees are negotiated simultaneously, a “tension” necessarily arises between the interests of class counsel and the interests of the class (Weinberger v Great N. Nekoosa Corp., 925 F2d 518, 524 [1st Cir 1991]). In Weinberger, the First Circuit discussed “clear sailing agreements,” where the corporation agrees not to contest an attorneys’ fee application up to a set amount. The court noted the need for scrutiny of attorneys’ fee applications because of the “danger . . . that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees” (id.). Because of this inherent conflict, the sounder method of calculating fees is ordinarily the “lodestar” method, hours times hourly rate, rather than a percentage of the common fund (id. at 526 n 10). Where the shareholders reject the proffered benefit by voting down the proposed merger, the tension between the interests of the class and its attorneys is greatest. In that circumstance, the lodestar method is clearly the more appropriate method to be utilized by the court.
Thus, at the hearing to be conducted, the court will determine the number of hours reasonably expended and a reasonable hourly rate. Plaintiffs are not entitled to the “negotiated fee” less an “appropriate percentage reduction.” The burden of showing the reasonableness of the number of hours and the hourly rate lies with the plaintiffs (Klein v Robert’s Am. Gourmet Food, Inc., 28 AD3d 63, 75 [2d Dept 2006]). While contemporaneously maintained time records are not required, plaintiffs must submit an “objective and detailed breakdown by the attorney of the time and labor expended, together with other *435 factors [which] support[ ] the fee requested” (id.). Plaintiffs must submit “definite information ... as to the way in which the time was spent (discovery, oral argument, negotiation, etc.), [and] as to the experience and standing of the various lawyers performing each task (senior partner, junior partner, associate, etc.)” (id.).
Even though the merger concessions did not benefit the class directly, plaintiffs may recover the reasonable value of services devoted to negotiating the merger agreement. A merger agreement was necessary in order to realize the contingent benefit of an increase in the share price. However, in reviewing the number of hours, the court may not award compensation for “duplication of services.” (Becker v Empire of Am. Fed. Sav. Bank, 177 AD2d 958, 959 [4th Dept 1991].) Accordingly, plaintiffs’ application for an attorneys’ fee award is granted to the extent that a hearing shall be conducted on the reasonable value of legal services performed on behalf of the class. The hearing shall be conducted on September 18, 2008 at 9:30 a.m. in this Part.
In federal court, under the Private Securities Litigation Reform Act (15 USC § 78u-4), the court is required to appoint a “lead plaintiff,” who, subject to the approval of the court, selects and retains counsel to represent the class (see In re Cendant Sec. Litig., 404 F3d at 197). The lead plaintiff has considerable authority over compensation of non-lead counsel for work performed after the lead plaintiff has been appointed. A decision by the lead plaintiff that non-lead counsel is not entitled to non-lead compensation for such work is subject to a “presumption of correctness” (id. at 199). CPLR 909 does not accord a similar authority to class representatives over fee applications by attorneys not representing the class. Thus, the court will not distinguish between “lead” and “liaison” counsel for purposes of the present fee application.