FOURTH DIVISION
MARCH 30, 2007

No. 1-05-3587

| | | |
|---|---|---|
| LAURENCE A. ROSEN, Individually and on Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| INGERSOLL-RAND COMPANY, a New Jersey Corporation, and KRYPTONITE CORPORATION, a Massachusetts Corporation, | ) ) ) | No. 04 CH 15345 |
| Defendants-Appellees, | ) ) | |
| SAL TORONTO, JOSHUA YULE, and JENNIFER LINDENAUER, | ) ) ) ) | Honorable Julia M. Nowicki, |
| Appellants. | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

Following the entry of a judgment in the circuit court of Cook County approving the settlement of a class action brought by named plaintiff Lawrence A. Rosen against defendants Ingersoll-Rand Co. and Kryptonite Corp., appellants Sal Toronto, Joshua Yule and Jennifer Lindenauer--non-named members of the class--appeal to this court, asking that the circuit court's order be reversed and that its injunction against related class actions in California be lifted.

The record on appeal discloses the following facts. In September 2004, an Internet website relating to cycling published anecdotal reports of a method by which tubular cylinder bicycle locks could be picked open with the casing of a ball-point pen. On September 15, 2004, defendants

issued a public statement stating that they would address concerns raised about the tubular locks they manufactured. On September 16, 2004, defendants issued a statement announcing they were creating a program under which certain owners of their tubular locks could receive new locks with a "disc-style" cylinder.

On September 17, 2004, defendants issued a statement outlining the "upgrade program," which provided for the replacement of certain tubular locks purchased since September 2002. Consumers who purchased such locks prior to September 2002 would be eligible for a rebate on future purchases of defendants' locks. Defendants imposed the September 2002 date because locks manufactured earlier had a larger diameter keyhole unable to be picked by a smaller pall-point pen casing. The press release also stated that further information would be made available on September 22, 2004.

On September 17, 2004, the first four lawsuits were filed against defendants. Ultimately, 23 lawsuits would be filed in the United States and Canada against defendants or their alleged affiliates, alleging breach of contract, breach of warranty, negligent misrepresentation and violations of various consumer protection statutes. Most of these lawsuits were filed as putative class actions. Appellants Toronto and Lindenauer are the named plaintiffs in other actions brought on behalf of a nationwide class against defendants. Plaintiff Rosen filed his complaint in the circuit court of Cook County on September 20, 2004.

On September 22, 2004, defendants issued their follow-up press release, announcing that the lock exchange program would be open to all eligible consumers currently using their tubular cylinder bicycle locks, commonly known as Kryptonite U-Locks.

On December 14, 2004, Rosen and Nathaniel Schwarz (the named plaintiff in an action then pending in Miami-Dade County, Florida) entered into a Settlement Agreement with the

defendants. Defendants continued to deny any liability. However, the agreement allowed class members who currently owned Kryptonite U-Locks to exchange them for comparable Kryptonite locks without tubular cylinders. In the alternative, class members could receive a $10 voucher for any Kryptonite product, redeemable within one year, transferrable and stackable up to the amount of $40. Class members whose bicycles were stolen due to a violation of a Kryptonite U-Lock could receive compensation (varying by the type of Kryptonite U-Lock involved) or the amount uncompensated by insurance, whichever was less. Defendants agreed to cease manufacture and distribution of the applicable Kryptonite U-Locks for 10 years. The agreement would release defendants from claims relating to the marketing and sale of the Kryptonite U-Locks, but did not release them from bodily injury claims. The agreement provided for obtaining court approval of the settlement, as well as the terms under which class members would get notice of the proposed settlement. The agreement further provided that defendants would not object to an attorney fee request of $690,000 and would pay class counsel that amount or the amount awarded by the court, whichever was less.

On December 27, 2004, the circuit court entered an order granting preliminary approval of the class settlement agreement as fair, adequate and reasonable. The circuit court found it had jurisdiction over the settlement class, consisting of all consumers in the United States and Canada who acquired certain Kryptonite U-Locks between September 20, 1998, through September 20, 2004, excluding the defendants' directors, officers and employees, and governmental entities. The order also approved the class notice plan as set forth in the agreement. The trial court required that class counsel add to the proposed order a provision requiring class counsel to send the order and agreement to counsel of record in the other known filed cases related to the litigation. The

agreement provided for an opt-out date of April 11, 2005. The circuit court set the agreement for final approval on April 21, 2005.

Class counsel mailed the order and agreement to counsel of record in the other known filed cases related to the litigation on December 31, 2004. On January 20, 2005, the summary notice approved by the court was submitted for publication in *Bicycling* magazine, which would begin to reach subscribers on February 22, 2005, and newsstands on March 1, 2005. On February 19, 2005, the summary notice was submitted to *Velonews*, which would begin to reach subscribers on March 9, 2005, and newsstands on March 15, 2005. On March 5, 2005 the notice and agreement were posted in French and English on an Internet website dedicated to the settlement. On March 11, 2005, notice was mailed to over 116,000 customers in the United States and Canada identifiable from defendants' records. That same day, notice was published in *USA Today*. On March 12, 2005, notice was published in *The Globe & Mail* and *The Montreal Gazette* in Canada, as well as in French in *La Presse* and *Le Soleil*. The newspaper publications were repeated the following week. On March 18, 2005, notice was mailed to over 6,000 bicycle stores and dealerships in the United States and Canada.

No formal discovery was taken prior to the preliminary approval of the settlement. On January 31, 2005, class counsel conducted confirmatory discovery in taking the deposition of Karen Rizzo, Director of Marketing of the Kryptonite business unit of the Schlage Lock Company, who was the person most knowledgeable about the marketing and sale of the Kryptonite U-Locks. Class counsel also propounded 14 interrogatories and four supplemental interrogatories, to which defendants responded in March and April of 2005.

On February 1, 2005, Toronto and four other named plaintiffs in other actions against defendants filed a petition for leave to intervene, arguing that the proposed settlement failed to

adequately protect their interests. The other putative intervenors are not appellants in this case. The petition argued that: no demurrer had been filed to test the allegations of the complaint; there was no evidence that the court was given evidence of the value of claims being released versus what defendants offered as relief, or analysis of the propriety of asserting nationwide class status in Cook County.

On February 5, 2005, the circuit court entered an agreed order advising that eight named plaintiffs and their counsel in related lawsuits had signed onto the settlement agreement.

On March 18, 2005, the putative intervenors filed a motion to delay the date for opting out of the class, the deadline for objecting to the settlement, and the date of the final fairness hearing. The motion sought the additional time to further consider the settlement and suggested that they would attempt to take limited discovery regarding their objections to the settlement.

The Settlement Administrator received 61 requests on behalf of 116 class members to opt-out of the settlement. Defendants received five purported objections from seven class members, three of which were from the appellants. The settlement agreement required that an objector must identify himself or herself as a class member by providing proof of purchase of their locks, or by an affidavit setting forth the facts of the purchase as best as the affiant could recall. Objectors were also required to state his or her address and indicate whether he or she planned to appear at the final fairness hearing. Toronto's declaration did not include his address or indicate whether he intended to appear at the final fairness hearing. Appellants Yule and Lindenauer did not provide proof of purchase or an affidavit.

On April 15, 2005, the circuit court issued a memorandum opinion and order denying leave to intervene or to continue any of the dates in the settlement process. The court ruled that the petitioners had failed to show any basis--such as adversity of interest, collusion or nonfeasance--

that would require granting intervention as a matter of right. The court also ruled that the petitioners would not be permitted to intervene by permission, as the petition raised matters best addressed at the fairness hearing. The trial court further noted that while petitioners suggested that a proper nationwide forum did not exist, one of the petitioners had brought a putative nationwide action in New Jersey. The trial court further stated that the petitioners had acknowledged that the settlement agreement was not a bad one.

On April 21, 2005, the circuit court conducted a final fairness hearing. The trial judge received the objections of the appellants and heard argument from appellants' counsel. The trial court also received class counsel's brief in support of the settlement and supporting documentation, including an expert opinion that the settlement was fair, adequate and reasonable. The trial court further received defendants' brief in support of the settlement and supporting documentation, including expert opinions that the settlement was fair, adequate and reasonable, and that the notice program was adequate and in compliance with applicable guidelines.

On June 16, 2005, the circuit court issued its memorandum opinion and order giving final approval to the settlement agreement. The trial court noted that 18 law firms and their clients had joined in the agreement. The trial court ruled that the agreement was fair and reasonable. The memorandum noted that the objections filed by the appellants were deficient under the terms of the notice program and that would be sufficient in itself to reject the objections. The court nevertheless went on to address and reject the objections lodged by the appellants on the merits.

Defendants filed a motion for clarification. On August 8, 2005, the trial court issued a memorandum opinion and order, elaborating on the deficiencies in appellants' objections and stating that the purported group opt-out requests submitted by counsel in related actions were invalid as a result of those deficiencies.

On August 18, 2005, the circuit court entered a final judgment and order of dismissal, approving the settlement, invalidating the purported group opt-outs, dismissing the action on the merits with prejudice and barring class members from commencing any action related to the released claims.

On September 19, 2005, class counsel filed a motion for sanctions against appellants; the motion was withdrawn on October 11, 2005. Appellants filed a notice of appeal to this court on November 4, 2005.

I

Initially, Rosen renews his argument--first presented by motion in this court--that the appeal is untimely. Rosen argues that class counsel's motion for sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) did not toll the time for appeal. According to Supreme Court Rules 301 and 304(a) (155 Ill. 2d Rs. 301, 304(a)), appeals may ordinarily be taken only from final orders that dispose of every "claim" raised in an action. John. G. Phillips & Associates v. Brown, 197 Ill. 2d 337, 339 (2001), citing Marsh v. Evangelical Covenant Church, 138 Ill. 2d 458, 465 (1990). The Illinois Supreme Court has held motions for sanctions under Supreme Court Rule 137 are "claims" in the cause of action with which they are connected and they "'shall be considered a claim within the same civil action.' (Emphasis added.)" (Emphasis omitted.) John G. Phillips, 197 Ill. 2d at 339-40, quoting 155 Ill. 2d R. 137. The supreme court has also found the circuit court has jurisdiction to act on a timely filed motion for Rule 137 sanctions even if such motion is filed after a notice of appeal. John. G. Phillips, 197 Ill. 2d at 340. Filing of a timely motion for Rule 137 sanctions renders the prior notice of appeal ineffective as premature. Cashmore v. Builders Square, Inc., 207 Ill. App. 3d 267, 273-74 (1990); see Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd., 182 Ill. 2d 6, 8 (1998). Indeed, this case law is now reflected in the

language of Rule 303 (a)(1), which provides in part that "[a] judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a)." Official Reports Advance Sheet No. 22 (October 26, 2005), R. 303(a)(1), eff. January 1, 2006.[1] Accordingly, appellants' notice of appeal, filed within 30 days of class counsel's withdrawal of the motion for sanctions, was timely filed and vests this court with jurisdiction.

II

Rosen and defendants next argue that appellants lack standing to bring this appeal. However, the leading case Rosen and defendants cite states that this issue "does not implicate the jurisdiction of the courts under Article III of the Constitution," thus it is not an issue of "standing." Devlin v. Scardelletti, 536 U.S. 1, 6, 122 S. Ct. 2005, 153 L. Ed. 2d 27 (2002). What is at issue, instead, is whether petitioner should be considered a "party" for the purposes of appealing the approval of the settlement. Devlin, 536 U.S. at 7, 122 S. Ct. 2005, 153 L. Ed. 2d 27. The Court explained that "[n]onnamed class members . . . may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." Devlin, 536 U.S. at 9-10, 122 S. Ct. 2005, 153 L. Ed. 2d 27. The Court articulated the issue in terms of "the right to appeal." Devlin, 536 U.S. at 7, 122 S. Ct. 2005, 153 L. Ed. 2d 27. The Court announced that "nonnamed class members . . . who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." Devlin, 536 U.S. at 14, 122 S. Ct. 2005, 153 L. Ed. 2d 27. On this point, our courts had already reached the

---

[1] Our supreme court amended Rule 303(a) again by an order entered March 16, 2007, but the amendment, effective May 1, 2007, does not affect the analysis above.

same conclusion under Illinois law. Gowdey v. Commonwealth Edison Co., 37 Ill. App. 3d 140, 146 (1976).

Rosen and defendants argue that appellants are barred from challenging the settlement because the objections filed were deficient under the terms of the notice program. In In re Integra Realty Resourcses, Inc., 354 F.3d 1246, 1257-58 (10th Cir. 2004), the court held that failure to comply with the requirements of a class notice waived the right to contest the approval of the settlement at the fairness hearing, which would render the nonnamed class member effectively unable to appeal. Appellants respond that technical deficiencies, such as the failure to properly include a class member's name and address, did not bar a nonnamed class member from appealing in Klein v. Robert's American Gourmet Food, Inc., 808 N.Y.S.. 2d 766, 770-72 (N.Y.A.D. 2 Dept. 2006). However, in Klein, the technical defects were in the nonnamed member's opt-out, which caused the court to hold that the opt-out should have been deemed invalid by the trial court and that the nonnamed member thus was a party who could appeal. Thus, Klein actually suggests that deficiencies in providing information required under a class notice are not to be disregarded.

In this case, none of the appellants complied with the requirements for objections set by the notice approved in this case. Nor were the conditions imposed onerous. Requiring that putative objectors identify themselves, make a minimal showing that they are members of the class and state whether they will appear at the fairness hearing merely allows the trial court to properly allot time at the hearing to persons actually affected by the settlement at issue. Accordingly, in this case, the trial court did not err in ruling that the supposed objectors had effectively waived that status by failing to comply with the requirements set forth in the notice.

III

Toronto argues that the trial court erred in denying him (and others not appellants) leave to intervene in the litigation. Intervention in a class action is governed by section 2-804 of the Code of Civil Procedure (735 ILCS 5/2-804 (West 2002)), which provides in relevant part:

> "(a) Intervention. Any class member seeking to intervene or other-
>
> wise appear in the action may do so with leave of court and such
>
> leave shall be liberally granted except when the court finds that such
>
> intervention will disrupt the conduct of the action or otherwise
>
> prejudice the rights of the parties or the class." 735 ILCS 5/2-804(a)
>
> (West 2002).

In ruling on motions to intervene, courts should be indulgent where objections concern notice of settlement. Fox v. Northwest Ins. Brokers, Inc., 113 Ill. App. 3d 255, 258 (1983). The procedure for intervention and the status of intervenors is controlled by section 2-408 of the Code of Civil Procedure (735 ILCS 5/2-408 (West 2002)), which provides in relevant part:

> "(a) Upon timely application anyone shall be permitted as of right to
>
> intervene in an action: (1) when a statute confers an unconditional
>
> right to intervene; or (2) when the representation of the applicant's
>
> interest by existing parties is or may be inadequate and the applicant
>
> will or may be bound by an order or judgment in the action; or
>
> (3) when the applicant is so situated as to be adversely affected by a
>
> distribution or other disposition of property in the custody or subject
>
> to the control or disposition of the court or a court officer.

(b) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

* * *

(e) A person desiring to intervene shall present a petition setting forth the grounds for intervention, accompanied by the initial pleading or motion which he or she proposes to file. In cases in which the allowance of intervention is discretionary, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." 735 ILCS 5/2-408(a),(b),(e) (West 2002).

The decision to allow or deny intervention, whether permissively or as of right, is a matter of sound judicial discretion that will not be reversed absent an abuse of that discretion. People ex rel. Birkett v. City of Chicago, 202 Ill. 2d 36, 57-58 (2002). An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. People v. Illgen, 145 Ill. 2d 353, 364 (1991). An application of impermissible legal criteria also justifies reversal. Boatmen's National Bank of Belleville v. Martin, 155 Ill. 2d 305, 314 (1993).

Toronto does not argue he was entitled to intervene as of right. See Waters v. City of Chicago, 95 Ill. App. 3d 919, 923-24 (1981)(intervention as of right unavailable where person can opt-out of class settlement). As for the permissive intervention, the circuit court ruled that the

petition raised matters best addressed at the fairness hearing. A review of the petition shows that Toronto argued that: no demurrer had been filed to test the allegations of the complaint; there was no evidence that the court was given evidence of the value of claims being released versus what defendants offered as relief, or analysis of the propriety of asserting nationwide class status in Cook County. The petition did not challenge the notice procedure. The trial judge could have concluded that permitting the putative intervenors to step into the shoes of the defendants on the one hand--to test the sufficiency of the complaint--and into the shoes of the rest of the class on the other hand--to scrutinize the value of the claims and defendant's offer of settlement--would unduly delay the litigation. Indeed, the trial court also had before it Toronto's other petition in which he and others specifically indicated their intent to seek additional discovery in the matter. Given the record, the trial court's decision was not arbitrary, fanciful, or unreasonable. Thus, the court did not abuse its discretion in denying the petition to intervene.

Accordingly, this court concludes that the appellants are not proper parties to challenge the settlement agreement in this appeal.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINN, P.J., and NEVILLE, J., concur.