2023 IL App (1st) 220530-U

No. 1-22-0530

Order filed March 10, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| KEITH FRISZ, | ) | Cook County |
| | ) | |
|    Petitioner-Appellant, | ) | |
| | ) | No. 19 D 3182 |
| and | ) | |
| | ) | |
| MARILYN FRISZ, | ) | Honorable |
| | ) | Robert W. Johnson, |
|    Respondent-Appellee. | ) | Judge presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where a motion for sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) remained pending in the circuit court when petitioner filed his notice of appeal and the court never made an express written finding that there was no just reason for delaying appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), we lack jurisdiction to entertain the merits of this appeal and must dismiss it.

¶ 2    As part of a marital settlement agreement incorporated into a judgment for a dissolution of marriage between petitioner Keith Frisz and respondent Marilyn Frisz, Marilyn was to receive a percentage share of Keith's thrift savings plan account. The plan administrator of Keith's thrift savings plan account transferred money to Marilyn pursuant to a qualified domestic relations order. However, Keith believed that Marilyn received an overpayment and brought a combined petition for an adjudication of indirect civil contempt and motion to enforce prior court orders as well as a motion for postjudgment relief, essentially seeking the court enforce its judgment for a dissolution of marriage and the qualified domestic relations order by requiring Marilyn to return the alleged overpayment. Following the court denying Keith all relief, he filed exhibits for the record that Marilyn sought to strike as an improper attempt to supplement the record. Because Marilyn believed Keith's filing was frivolous, she moved for sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), specifically requesting the court order Keith to pay the attorney fees she incurred in connection with responding to his filing.

¶ 3    While Marilyn's motion for sanctions was pending, Keith filed a notice of appeal. And now, Keith contends that, when the circuit court determined that his thrift savings plan administrator did not overpay Marilyn, it erroneously interpreted the parties' marital settlement agreement and its own qualified domestic relations order contrary to the plain language of both and the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2020)). However, because there is a pending Rule 137 motion for sanctions in the circuit court, we lack jurisdiction to entertain the merits of Keith's appeal. Consequently, for the following reasons, we dismiss it.

¶ 4                                    I. BACKGROUND

¶ 5    In April 2019, Keith filed a petition for a dissolution of marriage from Marilyn. The following month, Marilyn filed a response to Keith's petition as well as a counterpetition for a dissolution of marriage. While the dissolution proceedings were ongoing, Keith and Marilyn reached a marital settlement agreement. Ultimately, on April 17, 2020, the circuit court entered a judgment for a dissolution of marriage that incorporated the parties' marital settlement agreement. As part of the agreement, the parties settled how to divide Keith's thrift savings plan account, a retirement plan for federal employees. Under that provision, Marilyn was to receive "a transfer equal to 39% of the value of the marital portion" of the plan "on the date of division as her sole and separate property, free and clear of any interest of Keith." The parties agreed that the transfer would be made pursuant to a qualified domestic relations order and any costs associated with the transfer would be divided equally. The remaining balance of Keith's thrift savings plan account would be awarded to him as his sole and separate property, free and clear of any interest of Marilyn.

¶ 6    As of March 25, 2020, the value of Keith's thrift savings plan account was $281,117.88, and the money was spread across multiple funds. However, by April 17, 2020, the value of Keith's thrift savings plan account had increased to over $315,000. Except for a miniscule amount in a government securities fund, the rest of the balance was spread among a common stock index fund, a small cap stock index fund and an international stock index fund. At this point, Keith was only contributing to the latter three funds.

¶ 7    In June 2020, due to what Keith perceived to be volatility in the stock market, he moved all of the money in his thrift savings plan to the government securities fund in order to protect the gains his portfolio achieved subsequent to the parties' dissolution of marriage. Keith claimed that he performed the reallocation with Marilyn's consent. According to an activity summary from his

thrift savings plan account, since the date the circuit court dissolved his and Marilyn's marriage to the date of reallocation, he had contributed $4,568.92 to his thrift savings plan.

¶ 8     The following month, the circuit court entered an agreed qualified domestic relations order to implement the portion of the marital settlement agreement pertaining to the division of Keith's thrift savings plan. The court ordered $126,001.93 of the total balance of the account "as of April 17, 2020 ***, or the closest [thrift savings plan] valuation date thereto" be transferred to Marilyn. The court added that Marilyn's share shall also bear any interest and investment earnings or losses attributable thereon for periods subsequent to April 17, 2020, until the date of distribution. Lastly, the court ordered that Marilyn's share of the benefits be allocated on a *pro rata* basis among any sub-accounts maintained under Keith's main thrift savings plan account. The qualified domestic relations order also contained a provision detailing the procedures in case of an "[i]nadvertent [p]ayment[]." According to that provision, "in the event that the plan administrator inadvertently pays to [Marilyn] any benefits otherwise payable to the [Keith], [Marilyn] shall immediately return such payment to the plan administrator."

¶ 9     In late October 2020, the administrator of Keith's thrift savings plan sent him a letter notifying him that it received the qualified domestic relations order the prior month and that it was scheduled to transfer money to Marilyn pursuant to the order on December 21, 2020. The administrator asserted that the court order awarded Marilyn $126,001.93, which would be "adjusted for earnings and losses based on the value of the share price two business days prior to payment."

¶ 10     On January 25, 2021, Keith's thrift savings plan was valued at approximately $415,000, with the vast majority of that balance contained in the government securities fund. According to an activity summary from his thrift savings plan account, from the date after Keith performed his

reallocation in June 2020 to January 25, 2021, he had contributed $19,629.62. The following day, according to a correspondence from Keith's plan administrator, it transferred $192,873.65 to Marilyn from Keith's account. It is unclear from the record why there was a delay in the transfer.

¶ 11 A week later, Keith sent Marilyn a text and stated that he had received a letter from his plan administrator indicating Marilyn had been overpaid by approximately $70,000. In a subsequent text, Keith claimed his plan administrator should have transferred Marilyn $126,001.93. Around this time, Keith contacted his plan administrator and disputed its calculation of the required transfer to Marilyn. He further requested the plan administrator to review and recalculate the required payment to Marilyn. Meanwhile, Keith and Marilyn continued to discuss the issue via text. On February 15, 2021, Marilyn wrote that: "I did everything I was supposed to do. Not my fault they screwed up and directly ignored a court order." However, despite this assertion, Marilyn maintained that she would not do anything unless she had a directive from the legal department of Keith's plan administrator.

¶ 12 On February 17, 2021, the plan administrator responded to Keith and noted that it had reviewed and recalculated the required payment to Marilyn. Based upon its review, the administrator concluded that it processed and transferred money to Marilyn in accordance with its regulations and the terms of the circuit court's qualified domestic relations order. However, Keith was adamant that Marilyn had received too much money and asked her via e-mail to voluntarily return $41,923.02. He supported his request with various documents and calculations. Although Marilyn did not return the requested money, she asserted she was not ignoring Keith's request, but rather wanted something official from his plan administrator's legal department.

¶ 13 In May 2021, after Marilyn did not return the money Keith alleged she owed him, he filed a combined petition for an adjudication of indirect civil contempt and a motion to enforce prior

court orders. Therein, Keith argued that, by failing to return $42,679.69, Marilyn had willfully failed to comply with the terms and conditions of the parties' marital settlement agreement and the circuit court's qualified domestic relations order.[1] As such, Keith requested that Marilyn be held in indirect civil contempt and assessed an appropriate punishment as well as ordered to return $42,679.69 to the administrator of Keith's thrift savings plan based on the "[i]nadvertent payment" provision of the qualified domestic relations order.

¶ 14    Thereafter, Marilyn filed a motion to dismiss Keith's combined petition for an adjudication of indirect civil contempt and motion to enforce prior court orders. Marilyn argued that Keith's petition failed to state a cause of action, notably that it was devoid of any allegation that the plan administrator had determined there was an overpayment. Furthermore, Marilyn asserted that, because the plan administrator had actually determined that there had not been an overpayment, this determination was an affirmative matter defeating Keith's claims. As such, Marilyn requested the circuit court dismiss Keith's combined filing. Additionally, pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), Marilyn sought to have Keith pay the attorney fees she incurred in connection with defending his combined filing as a sanction for filing a frivolous document. Keith filed a response in opposition of Marilyn's motion to dismiss and for fees, arguing that he stated a cause of action and there was no affirmative matter defeating his claims. Because Keith argued he had brought a meritorious petition, Keith posited that sanctions were unwarranted.

¶ 15    Following the briefing on Keith's combined petition for an adjudication of indirect civil contempt and motion to enforce prior court orders, the circuit court continued the case multiple times. During one court appearance, the court informed Keith that his petition for an adjudication

---

[1] The precise amount Keith claimed that Marilyn owed him changed at various points throughout the proceedings. Keith, however, attributed these changes to various rounding differences.

of indirect civil contempt was not the proper mechanism to seek relief. Although there is no transcript from the proceeding in question, in a later filing in the circuit court, Keith asserted that he orally moved to withdraw the petition, but the court denied his request.

¶ 16 In September 2021, in order to present the proper mechanism for his relief, Keith filed a "Motion for Postjudgment Relief" pursuant to section 510 and 511 of the Act (750 ILCS 5/510; 5/511 (West 2020)). In his motion, he contended that the amount his plan administrator had transferred to Marilyn included his own post-marital contributions as well as gains from those post-marital contributions. Based on this, Keith argued that Marilyn received an overpayment of $42,641.14. Keith highlighted that the circuit court had continuing jurisdiction to enforce the terms of its judgment for a dissolution of marriage, and therefore, he sought an order forcing Marilyn to return that amount to his plan administrator. In addition to the postjudgment relief claim (Count I), Keith also pled independent claims of unjust enrichment (Count II) and breach of contract for breaching the parties' marital settlement agreement (Count III). In these two counts, Keith essentially sought the same relief as in his postjudgment relief claim.

¶ 17 In response, Marilyn moved to dismiss Keith's motion for postjudgment relief. Concerning Count I, Marilyn argued that the claim failed on its face because it did not seek a modification of judgment and it did not allege that she failed to comply with the dissolution of marriage judgment, which would warrant enforcement by the court. Additionally, Marilyn argued that, under Count II, Keith failed to sufficiently allege that she was unjustly enriched as she only obtained what was ordered under a qualified domestic relations order. And lastly, Marilyn posited that, under Count III, Keith failed to allege that she breached the parties' marital settlement agreement, which was an essential element in a breach of contract claim. Additionally, pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and section 508(b) of the Act (750 ILCS 5/508(b) (West 2020)),

Marilyn sought to have Keith pay the attorney fees she incurred in connection with defending his motion as a sanction for filing a frivolous document.

¶ 18    Later in September 2021, Keith filed a motion to amend and combine his petition for an adjudication of indirect civil contempt and motion to enforce court orders with his motion for postjudgment relief. Keith asserted that, although the filings sought different forms of relief that required different standards of proof, they both originated from the same underlying facts and issues. According to Keith, in order for all of the matters to be resolved and adjudicated together, the filings had to be amended and combined. Marilyn opposed Keith's request, asserting that combining the various filings served no purpose other than to further delay the case and unreasonably increase attorney fees. To this end, Marilyn once again sought to have Keith pay the attorney fees she incurred in connection with responding to his motion under Rule 137 and section 508(b) of the Act.

¶ 19    In November 2021, following a hearing, the circuit court entered an order disposing of all of the parties' open filings. Initially, the court denied Marilyn's motion to dismiss Keith's combined petition for an adjudication of indirect civil contempt and motion to enforce prior court orders as well as her motion to dismiss Keith's motion for postjudgment relief. Next, the court denied Keith's combined petition for an adjudication of indirect civil contempt and motion to enforce prior court orders, his motion for postjudgment relief, and his motion to combine and amend. Additionally, the court denied all of Marilyn's requests for attorney fees. The order denying the parties their requested relief did not contain the court's reasoning, and there is no transcript of the hearing in the record on appeal.

¶ 20    Immediately following the hearing, Keith's attorney filed various "exhibits of record" to be part of the circuit court record. Some of the exhibits were already included in the record, such

as the court's dissolution of marriage judgment, the parties' marital settlement agreement and the court's qualified domestic relations order. However, other exhibits had never been included in the record, such as what appear to be calculations performed by Keith or his attorney about what they believed to be Marilyn's proper share of Keith's thrift savings plan. Along with filing the exhibits in the circuit court, a representative of Keith's attorney e-mailed Marilyn's attorney and provided a notice of filing along with the exhibits. Marilyn's attorney responded to Keith's attorney, "demand[ing]" that the exhibits be withdrawn and asserting that such conduct was "sanctionable." Keith's attorney replied, stating that the objection was "baseless" because he could "file anything of record." Furthermore, Keith's attorney observed that the exhibits were the basis for his "client's testimony that was never heard" at the hearing.

¶ 21    When Keith did not withdraw the exhibits from the record, Marilyn filed a motion to strike them from the record. In conjunction with the motion, Marilyn also filed a motion for attorney fees pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and section 508(b) of the Act (750 ILCS 5/508(b) (West 2020)) as a sanction for the costs she incurred in filing the motion to strike. Thereafter, Keith filed a response to Marilyn's motion to strike, wherein he stated that he had filed a motion to reconsider that incorporated the exhibits at issue, and thus, her motion to strike was moot. Moreover, Keith asserted that, during the November 2021 hearing on his various filings, he sought to testify with the use of the exhibits and made an offer of proof as to that evidence. However, according to Keith, the court denied him the opportunity to testify and present evidence. As such, Keith stated that the exhibits were merely intended to support that offer of proof for the record. Keith also moved to dismiss Marilyn's motion for attorney fees.

¶ 22    In December 2021, Keith filed a motion to reconsider the circuit court's judgment on his combined petition for an adjudication of indirect civil contempt and motion to enforce prior court

orders, his motion for postjudgment relief and his motion to combine and amend. In that motion to reconsider, Keith noted that he was not permitted to testify or present evidence during the circuit court's hearing on his various filings. According to Keith, had he been permitted to testify and present evidence, he would have been able to establish that Marilyn was overpaid by approximately $42,000, which was attributable to his plan administrator giving Marilyn non-marital money. Because the calculation of this amount involved "financial complexity," he argued that the court erred in denying him the opportunity to present evidence. In the motion, Keith referenced the exhibits he filed in the "exhibits of record" filing. In response, Marilyn asserted that Keith had not shown the court committed any error in applying the existing law, and therefore, she contended that his motion to reconsider should be denied. The same day Marilyn filed her response, she also filed an "Objection to Exhibits," a separate document directed at the exhibits Keith had filed in the circuit court, in which she raised additional contentions as to why Keith could not supplement the record in the manner he did.

¶ 23    On March 18, 2022, following a hearing on Keith's motion to reconsider, the circuit court denied the motion. The order denying Keith's motion did not contain the court's reasoning, and there is no transcript of the hearing in the record on appeal. In that order, the court also scheduled a hearing for argument on Marilyn's pending motion for attorney fees under Rule 137 and section 508(b) of the Act, Keith's motion to dismiss that motion for attorney fees, Marilyn's motion to strike the exhibits from the record and Marilyn's objection to those exhibits.

¶ 24    Before the date of the scheduled hearing on the remaining issues in the case, Keith filed a notice of appeal seeking review of the circuit court's ruling on his combined petition for an adjudication of indirect civil contempt and motion to enforce prior court orders as well as his motion for postjudgment relief. On the date of the scheduled hearing, the circuit court determined

that it lacked jurisdiction to conduct the hearing on the pending filings because Keith had filed the notice of appeal. As a result, the court entered and continued those filings, and scheduled a status hearing on the appeal.

¶ 25                                    II. ANALYSIS

¶ 26      On appeal, Keith contends that, when the circuit court determined that his thrift savings plan administrator did not overpay Marilyn, it erroneously interpreted the parties' marital settlement agreement and its own qualified domestic relations order contrary to the plain language of both and the Act (750 ILCS 5/101 *et seq.* (West 2020)). And thus, Keith argues that we should vacate the court's rulings on his combined petition for an adjudication of indirect civil contempt motion to enforce prior court orders as well as his motion for postjudgment relief.

¶ 27      At the outset, however, Marilyn argues that we lack jurisdiction to entertain the merits of Keith's appeal because he filed his notice of appeal before the circuit court resolved her motion for attorney fees and her filings related to his exhibits. "A reviewing court must ascertain its jurisdiction before proceeding in a cause of action." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). As such, before proceeding to consider the merits of Keith's appeal, we must determine the threshold question of whether we have jurisdiction over the appeal. See *id.*

¶ 28      In Keith's jurisdictional statement in his brief, he asserts that we have jurisdiction to hear his appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). Rule 301 provides that every final judgment in a civil case is appealable as a matter of right. *Id.* "A final judgment is a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 232-33 (2005). In other words, a final judgment is a judgment

- 11 -

that leaves nothing left to be done except enforcement. *A & R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 17.

¶ 29 Oftentimes in litigation, the circuit court enters a judgment that would be final but for the existence of still-pending claims or parties. This situation is what Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) contemplates. Rule 304(a) provides, in part, that if "multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the *** claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." *Id.* However, merely because the court makes the required finding under Rule 304(a), that does not mean the finding is dispositive. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 24. Rule 304(a) was not intended to promote piecemeal litigation (*In re Marriage of Leopando*, 96 Ill. 2d 114, 119-20 (1983)), and in order to find that there is no just reason for delaying an appeal, the court should consider several factors. See *American Advisors Group v. Williams*, 2022 IL App (1st) 210734, ¶ 14. Indeed, the court can abuse its discretion in entering a Rule 304(a) finding. See *AT & T v. Lyons & Pinner Electric Co.*, 2014 IL App (2d) 130577, ¶ 26 ("We conclude that the trial judge abused his discretion in entering the Rule 304(a) finding, and therefore the appeal is not properly before this court.").

¶ 30 This brings us to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), the rule under which Marilyn brought her motion for sanctions, wherein she requested attorney fees. Every document filed in the circuit court by a represented party must be signed by one attorney of record. Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). That signature acts as a certification by the attorney that the document has a proper basis in fact, a proper basis in law and "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Id.* When a party believes that a document has been filed in the circuit court in violation of Rule 137,

that party may file a motion for appropriate sanctions, which may include the amount of reasonable attorney fees incurred due to the filing. *Id.*

¶ 31 The relationship between "claims," as discussed in Rule 304(a), and motions for sanctions under Rule 137 is that such motions "are 'claims' in the cause of action with which they are connected." *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 339 (2001). Motions under Rule 137 involve "the propriety of filings in the underlying action" and necessitate appellate review of "not only the particular filing or filings which were the subject of the motion, but often the entire context of the surrounding litigation." *Id.* at 342. "Accordingly, such appeals should be considered in tandem with any appeal from the litigation from which it was spawned." *Id.* Stated otherwise, "a Rule 137 motion is the functional equivalent of adding an additional count to a complaint, or counter-claim, depending on which party files the motion." *Id.* at 340. To this end, a motion for sanctions under Rule 137 must be filed in the same action as the pleading or motion it is directed against. Ill. S. Ct. R. 137(b) (eff. Jan. 1, 2018). In summarizing the interplay between Rule 304(a) and Rule 137, our supreme court has stated:

> "(1) absent a Rule 304(a) finding, a notice of appeal may not be filed before the trial court has disposed of all claims; (2) requests for sanctions under Rule 137 are claims within the underlying action; therefore (3) absent a Rule 304(a) finding, a notice of appeal may not be filed until the trial court has disposed of all requests for sanctions under Rule 137." *Brown*, 197 Ill. 2d at 341.

¶ 32 Subsequent to our supreme court's decision in *Brown*, Illinois Supreme Court Rule 303(a)(1) was amended to reflect the decision. *Rosen v. Ingersoll-Rand Co.*, 372 Ill. App. 3d 440, 445 (2007). As amended in 2005, the new Rule 303(a)(1) provided that "[a] judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding

- 13 -

pursuant to Rule 304(a)." Ill. S. Ct. R. 303(a)(1) (eff. Jan. 1, 2006). That remains the rule today. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 33 With these principles in mind, we now turn to the instant case. Following the circuit court's judgment on November 22, 2021, disposing of all pending filings by the parties, Keith filed various exhibits in the circuit court that he wanted to be part of the record for purposes of his motion for postjudgment relief. Believing that Keith improperly supplemented the record, Marilyn moved to strike the exhibits from the record and in conjunction, filed a motion for sanctions under Rule 137 (as well as section 508(b) of the Act (750 ILCS 5/508(b) (West 2020)), specifically requesting attorney fees. Once Marilyn filed her motion for sanctions under Rule 137, which no one disputes was timely done (see Ill. S. Ct. R. 137(b) (eff. Jan. 1, 2018)), she brought to life a new claim in the action. See *Brown*, 197 Ill. 2d at 340-41. So despite the circuit court's ruling on Keith's combined petition for an adjudication of indirect civil contempt motion to enforce prior court orders as well as his motion for postjudgment relief, Marilyn's motion for sanctions under Rule 137 was a still-pending claim. And under Rule 303(a)(1) (eff. July 1, 2017), "[a] judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a)."

¶ 34 Even if the circuit court had entered a finding under Rule 304(a), as provided in Rule 303(a)(1), that arguably would not have been appropriate given that Marilyn filed her motion for sanctions very late in the proceedings. As our supreme court stated in *Brown*, 197 Ill. 2d at 344-45, motions for sanctions "are, as a general matter, inextricably interwoven with the case in which they arise" and "should, as a rule, be considered together with any appeal from the underlying case." Although the circuit "court may believe that the appeal of the underlying judgment should not have to await its resolution of a sanctions claim" based on the circumstances of the case, "the

- 14 -

better general rule is that appeals should be unitary." *Id.* at 345. Therefore, given when Marilyn filed her motion for sanctions, a Rule 304(a) finding would arguably have been improper.

¶ 35    Nevertheless, Keith posits that the filings pending in the circuit court are collateral issues unrelated to those he raised in his notice of appeal, and therefore, they do not affect the viability of his instant appeal. For support, Keith cites *Bhutani v. Courts of Northbrook Condominium Association*, 2017 IL App (1st) 162378-U and *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087. *Bhutani*, however, was an unpublished order filed under Illinois Supreme Court Rule 23 (eff. Feb. 1, 2023), and because it was published before January 1, 2021, it has no citable value for purposes of this appeal. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023). Moreover, the decision is inapposite because it has nothing to do with a Rule 137 motion for sanctions, which is at issue in this case. For the same reason, *A.M. Realty* is inapposite because the decision also does not involve a Rule 137 motion for sanctions. Keith is correct that, when collateral issues are pending in the circuit court, these issues will not always preclude appellate jurisdiction. For instance, "motions for fees collateral to the judgment," such as for subpoena witness fees or deposition costs, "do not affect the appealability of a final judgment." *Phoenix Capital, LLC v. Tabiti*, 2016 IL App (1st) 162686, ¶ 7. But, "[u]nder Rule 137, a proceeding for attorney's fees is within and a part of the underlying civil action, not a separate cause of action." *Id.*

¶ 36    In sum, because Marilyn's Rule 137 motion for sanctions was still pending in the circuit court, the court's other rulings were not presently appealable. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). As such, we lack jurisdiction to entertain the merits of Keith's appeal. See *Brown*, 197 Ill. 2d at 338-39. We acknowledge the burden this conclusion puts on the parties who now have to go back to the circuit court and may end up appealing again on the merits from below. However,

if this does occur, the parties "may file a motion asking to adopt the briefs already on file in this case as their briefs in the subsequent appeal." *Howe v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago*, 2013 IL App (1st) 122446, ¶ 33. Because we lack jurisdiction, we must dismiss this appeal. See *In re Marriage of Sanchez & Sanchez-Ortega*, 2018 IL App (1st) 171075, ¶ 20 ("An appeal must be dismissed where [appellate] jurisdiction is lacking.").

¶ 37                              III. CONCLUSION

¶ 38    For the foregoing reasons, we dismiss this appeal for a lack of jurisdiction.

¶ 39    Appeal dismissed.